711 So.2d 1005 (1998)
SOUTH CENTRAL BELL TELEPHONE COMPANY, et al.
v.
STATE of Alabama and State Department of Revenue.
1960591.
Supreme Court of Alabama.
March 20, 1998.
Walter R. Byars of Steiner, Crum & Baker, Montgomery; and Walter Hellerstein, Athens, GA, for appellant.
Bill Pryor, atty. gen.; Ron Bowden, counsel, Department of Revenue, and asst. atty. gen.; and Dan E. Schmaeling, asst. counsel, Department of Revenue, and asst. atty. gen., for appellee.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala. R.App. P., and White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989), cert. denied, Reynolds Metals Co. v. Sizemore, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990).
HOOPER, C.J., and ALMON, SHORES, and HOUSTON, JJ., concur.
MADDOX, J., concurs specially.
KENNEDY, COOK, BUTTS, and SEE, JJ., dissent.
MADDOX, Justice (concurring specially).
Although I agree that the judgment of the trial court is due to be affirmed, I write separately to explain why I have reached that conclusion, especially in view of the arguments raised by the taxpayers.
This case originated as a challenge by South Central Bell Telephone Company ("Bell") of an assessment of franchise tax liability against it by the Alabama Department of Revenue. On December 15, 1989, Bell filed in the Montgomery County Circuit Court a notice of appeal and a complaint and petition for judicial review of the assessment. On November 29, 1990, Judge William R. Gordon ordered that the Bell case be consolidated with similar actions that had been filed recently by several of Bell's sister corporations.[1] Both before and after this consolidation, all the plaintiffs were represented by the same attorney.[2]
On December 13, 1990, CSX Transportation, Inc., filed several actions challenging assessments of franchise tax liability, on essentially *1006 the same grounds that had been raised by Bell. CSX was represented in each of those actions by the same attorney representing Bell and its sister corporations. On May 28, 1992, upon motion by all the plaintiffs, Judge Gordon ordered the consolidation of the Bell and CSX actions.
At the trial level, the State contended, as it does here, that Bell and CSX should be estopped from litigating this case, because of the preclusive effect of this Court's decision in White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989). In Reynolds Metals, this Court, with an opinion concurred in by every member of the Court as it was constituted at that time, concluded that the franchise tax, as applied to foreign corporations, did not violate the United States Constitution. Subsequently, the United States Supreme Court denied certiorari review of this Court's decision. Reynolds Metals Co. v. Sizemore, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990). Consequently, the final decision in Reynolds Metals was adverse to the taxpayer in Reynolds Metals and was adverse to the taxpayers in this case. The State claims that the decision of this Court in the Reynolds Metals case, and the refusal of the Supreme Court of the United States to review it, preclude both Bell and CSX from claiming that a different result should be reached in this case.
Because the proceedings in Reynolds Metals and the early stages of this litigation occurred during the same period, and because that chronological interrelatedness partially informs my conclusions regarding this case, I set out some of that chronology. The Reynolds Metals case was filed before Judge Gordon several months before Bell filed its action, and on July 7, 1989, Judge Gordon entered an order holding that Alabama's franchise tax, as applied to foreign corporations, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Shortly thereafter, on November 28, 1989, the Court of Civil Appeals affirmed the judgment of the trial court. See White v. Reynolds Metals Co., 558 So.2d 367 (Ala.Civ.App.1989). Approximately three weeks later, Bell filed the action, later consolidated with actions by both CSX and the related BellSouth companies, that is now before this Court.
On January 19, 1990, approximately one month after filing its notice of appeal, Bell, through its attorney, Walter R. Byars, asked the trial court to place its case on the "administrative docket" pending the outcome of the Reynolds Metals action. Mr. Byars wrote:
"[B]oth the taxpayer and the State Department of Revenue desire that further proceedings with regard to this appeal be held in abeyance pending a final disposition of the Reynolds and GMAC cases, whether that be at the rehearing stage before the Alabama Supreme Court or by judicial review in the U.S. Supreme Court. However, if either party desires to proceed at a later date, with the Court's permission, this case would be activated."
Judge Gordon subsequently placed the case on his administrative docket. It appears to me, from this letter, that both parties advised Judge Gordon that they were going to be bound by the final decision in the Reynolds Metals case, and that either party could proceed further only with the permission of the trial court. In short, it appears to me that the parties agreed that the final decision in Reynolds Metals would be controlling.
To clarify the relationship of these cases, I set out the following brief timeline:
7/7/89 Judge Gordon, in the Reynolds Metals case, enters an order holding that Alabama's foreign franchise tax was unconstitutional.
11/28/89 The Court of Civil Appeals affirms the trial court's Reynolds Metals judgment.
12/15/89 South Central Bell files its notice of appeal in Bell.
12/21/89 This Court reverses the judgments of the trial court and the Court of Civil Appeals in Reynolds Metals. 1/12/90 This Court denies rehearing in Reynolds Metals.
1/19/90 Bell and the State Department of Revenue file a joint request with the trial court to place Bell on its administrative docket, pending the final resolution of Reynolds Metals.
*1007 1/23/90 Judge Gordon places Bell on his administrative docket.
6/4/90 The United States Supreme Court denies certiorari review in Reynolds Metals.
8/?/90 Complaint is filed by BellSouth Corporation; BellSouth Services, Inc.; BellSouth Financial Services Corporation; BellSouth Advertising & Publishing Company; BellSouth Resources, Inc.; Alabama Cellular Services, Inc.; Sunlink, Inc.; and TechSouth, Inc. (collectively, "BellSouth"). This complaint was filed by the same lawyer representing Bell.
11/29/90 Judge Gordon orders consolidation, upon motion of the plaintiffs, of the Bell and BellSouth cases (hereinafter those cases are called "Bell").
12/13/90 Several notices of appeal and complaints are filed in the Montgomery County Circuit Court by CSX, challenging foreign franchise tax assessments for various tax years. (Same lawyer as in Bell.)
05/28/92 Judge Gordon orders consolidation of Bell with the CSX cases. (Hereinafter those cases are called "Bell").
The taxpayers contend that they are not precluded from litigating this action now. They rely on State v. Delaney's, Inc., 668 So.2d 768 (Ala.Civ.App.1995) (Court of Civil Appeals held that the doctrine of claim preclusion does not apply in tax cases involving different tax years and that the doctrine of issue preclusion does not apply where the legal landscape has been altered). I am not unaware of the taxpayers' arguments that neither claim preclusion nor issue preclusion can apply in this case. While I do not necessarily disagree with the reasoning of Delaney's and the precedents upon which it is based, I believe this present case presents an exception to the principles of law set out in that case.
In this case it appears to me that the actions of the taxpayers show that each of them was aware of the Reynolds Metals litigation and that each realized that its claims were dependent on the final resolution of Reynolds Metals. Although I realize that the United States Supreme Court's denial of certiorari review does not necessarily mean that the Court agrees with the conclusion reached by a lower Court,[3] and although I realize that the Supreme Court has released some opinions that could be interpreted as indicating a change in that Court's view of the constitutionality of state taxes such as that at issue in this case, the fact remains that the Supreme Court refused to review this Court's decision in Reynolds Metals, and that, as of today, Reynolds Metals remains the law.
In my consideration of the trial court's disposition of this case, I find no reversible error. All the cases that were eventually consolidated were pending before Judge Gordon, and they all involved the same counsel and the same issues. Further, Bell specifically requested that its case be held in abeyance until Reynolds Metals was decided. In light of these facts, Judge Gordon concluded that the taxpayers were estopped from arguing that Reynolds Metals did not govern this matter. I cannot hold that his conclusion amounted to reversible error. I also do not believe that the trial court's holding that the taxpayers are estopped to assert their rights violates their rights under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution, in view of the holding in Richards v. Jefferson County, 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). The operative facts of this case relating to the Due Process Clause argument are, in my opinion, wholly different.
In concluding that the trial court did not err in holding that the decision in Reynolds Metals precluded the claims of these particular taxpayers, I do not address the taxpayers' argument that cases decided by the United States Supreme Court since Reynolds Metals require a holding that the tax violates the Equal Protection and Commerce Clauses of the United States Constitution.
SEE, Justice (dissenting).
I respectfully dissent from the majority's no-opinion affirmance of the trial court's dismissal *1008 of this tax case. In my view, the taxpayers' claims are not barred by the doctrine of res judicata. Moreover, it is inescapable that the Alabama franchise tax scheme runs afoul of the design of the Constitution of the United States to make of this nation a single market.
Several foreign corporations, including South Central Bell, a number of related BellSouth companies, and CSX Transportation, Inc. (collectively, the "Taxpayers"), filed separate actions against the State Department of Revenue (the "Revenue Department"), alleging that Alabama's franchise tax scheme discriminates against foreign corporations in violation of the Commerce Clause of the Constitution of the United States. The Taxpayers' actions were filed while an action filed by Reynolds Metals Company raising the same constitutional challenge was on appeal to this Court. The Taxpayers' actions were stayed, however, pending the outcome of the Reynolds Metals appeal. This Court in White v. Reynolds Metals Co., 558 So.2d 373 (Ala. 1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990), held that Alabama's franchise tax scheme did not violate the Commerce Clause.
The Taxpayers then proceeded with their actions, seeking refunds of foreign franchise taxes paid for the tax years 1988, 1989, 1990, and 1991. After consolidating the actions for trial, the trial court dismissed the Taxpayers' claims, holding that Reynolds Metals finally decided the interstate commerce issue against the Taxpayers and, thus, that their claims were barred under the doctrine of res judicata. The Taxpayers filed this appeal.

I. Res Judicata
The doctrine of res judicata applies to bar a subsequent action only when there is (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with the same parties, and (4) with the same subject matter presented in both actions. Smith v. Union Bank & Trust Co., 653 So.2d 933 (Ala.1995). In Reynolds Metals, 558 So.2d 373, this Court, acting with proper jurisdiction, rendered a judgment on the merits, upholding the Alabama franchise tax scheme against a Commerce Clause challenge. However, we have stated that "the doctrine [of res judicata] should be sparingly applied in tax cases involving liability for different years." State v. Plantation Pipe Line Co., 265 Ala. 69, 92, 89 So.2d 549, 569, cert. denied, 352 U.S. 943, 77 S.Ct. 263, 1 L.Ed.2d 237 (1956). This is particularly true in this case, where we are dealing not only with different tax years, but also with different taxpayers. See generally Richards v. Jefferson County, 517 U.S. 793, 802-05, 116 S.Ct. 1761, 1768-69, 135 L.Ed.2d 76 (1996) (holding that the doctrine of res judicata could not bar the plaintiffs' federal constitutional challenge to a local tax where the plaintiffs had not been parties to a prior proceeding that resulted in a judgment on the tax). Further, the doctrine of res judicata does not apply when the judgment pleaded as an estoppel is based upon controlling decisions subsequently repudiated by supervening decisions, thereby necessitating a reexamination and an application of controlling precedent to the question. Gillespie v. Commissioner of Internal Revenue, 151 F.2d 903, 906 (10th Cir.1945). Although the State pleads the judgment in Reynolds Metals, 558 So.2d 373, as an estoppel in this case, the Supreme Court of the United States, as I explain below, has rendered intervening decisions that repudiate the Reynolds Metals rationale. Accordingly, the doctrine of res judicata does not bar this action.

II. Interstate Commerce
The Commerce Clause of the Constitution of the United States, art. I, § 8, provides:
"The Congress shall have Power ... [t]o regulate Commerce ... among the several States...."
The Supreme Court has long interpreted these words not only to grant Congress a broad affirmative power to regulate interstate commerce, but also to preclude States from discriminating against interstate commerce. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824); Cooley v. Board of Wardens, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851); Southern Pacific Co. v. Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 *1009 L.Ed.2d 326 (1977). The negative aspect of the Commerce Clause, often referred to as the Dormant Commerce Clause, prohibits a State from engaging in economic protectionism. Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179-80, 115 S.Ct. 1331, 1335-36, 131 L.Ed.2d 261 (1993). Thus, although States retain the police power to enact and enforce laws that will inevitably impose costs and benefits on businesses operating within their respective borders, the Dormant Commerce Clause precludes a State from so crafting its statutes as to discriminate against or unduly burden interstate commerce.
The Supreme Court has adopted a two-tiered approach in the application of its Dormant Commerce Clause jurisprudence. "When a State statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests," the Supreme Court has "generally struck down the statute without further inquiry." Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986). "When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly," the Supreme Court has "examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." Id.
With respect to state taxes, a tax scheme is discriminatory if it "tax[es] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334, 342, 112 S.Ct. 2009, 2014, 119 L.Ed.2d 121 (1992) (quoting Armco, Inc. v. Hardesty, 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540 (1984)). A state taxation scheme that on its face discriminates against interstate commerce is "virtually per se invalid." Oregon Waste Systems, Inc. v. Department of Envtl. Quality, 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994). Nonetheless, even a facially discriminatory tax may survive a Dormant Commerce Clause challenge if it is a "compensatory tax," that is, a tax "designed simply to make interstate commerce bear a burden already borne by intrastate commerce." Associated Industries of Missouri v. Lohman, 511 U.S. 641, 647, 114 S.Ct. 1815, 1820-21, 128 L.Ed.2d 639 (1994).
In Fulton Corp. v. Faulkner, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), the Supreme Court examined a North Carolina tax that the State claimed was purportedly compensatory. The State of North Carolina imposed an intangibles tax on the fair market value of stock owned by North Carolina residents. Id. at 327-28, 116 S.Ct. at 852. The State, however, reduced the base of the intangibles tax by an amount that varied with the proportion of the corporation's income subject to North Carolina income tax. Id. Under this variable reduction scheme, residents who owned stock in a corporation that earned all of its income in North Carolina paid no intangibles tax, while residents who owned stock in a corporation that earned all of its income outside North Carolina paid the intangibles tax on the full fair market value of the shares owned. Id. Because the tax was computed on a different net base depending on the extent of the corporation's out-of-state activities, it facially discriminated against interstate commerce. Id. at 328, 333 & n. 3, 116 S.Ct. at 852 & n. 3 (quoting Maryland v. Louisiana, 451 U.S. 725, 760, 101 S.Ct. 2114, 2136, 68 L.Ed.2d 576 (1981) ("We need not know how unequal the Tax is before concluding that it unconstitutionally discriminates.")).
The Supreme Court then addressed whether the North Carolina intangibles tax was nonetheless valid as a "compensatory tax." The Supreme Court set forth three conditions for upholding a discriminatory tax as a "compensatory tax":
"First, `a State must, as a threshold matter, "identif[y] ... the [intrastate tax] burden for which the State is attempting to compensate."` ... Second, `the tax on interstate commerce must be shown roughly to approximatebut not exceedthe amount of the tax on intrastate commerce.'... `Finally, the events on which the interstate and intrastate taxes are imposed must be "substantially equivalent"; that is, they must be sufficiently similar in substance *1010 to serve as mutually exclusive "prox[ies]" for each other.'"
Fulton, 516 U.S. at 332-33, 116 S.Ct. at 854-55 (citations omitted). The Supreme Court rejected North Carolina's argument that its general corporate income tax imposed an intrastate burden for which the specific intangibles tax was meant to compensate.[4]Id. at 334-36, 116 S.Ct. at 855-56. "[P]ermitting discriminatory taxes on interstate commerce to compensate for charges purportedly included in general forms of intrastate taxation would allow a state to tax interstate commerce more heavily than in-state commerce anytime the entities involved in interstate commerce happened to use facilities supported by general state tax funds." Id. at 335, 116 S.Ct. at 856 (quoting Oregon Waste, 511 U.S. at 105 n. 8, 114 S.Ct. at 1353-54 n. 8 (quoting Government Suppliers Consolidating Servs., Inc. v. Bayh, 975 F.2d 1267, 1284 (7th Cir.1992), cert. denied, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993))).
Next, the Supreme Court held that North Carolina had failed to demonstrate that its intangibles tax on interstate commerce roughly approximated, but did not exceed, that portion of its general corporate income tax on intrastate commerce that benefited foreign corporations (by creating a capital market that facilitated the sale of stock to North Carolina residents). Id. at 337-38, 116 S.Ct. at 856-57. The Supreme Court stated that "[w]here general forms of taxation are involved, we ordinarily cannot even begin to make the sorts of quantitative assessments that the compensatory tax doctrine requires." Id. at 338, 116 S.Ct. at 857.
Finally, the Supreme Court held that North Carolina had failed to show that the events taxed by the intangibles tax, which taxed the value of stock, and by the general corporate income tax, which taxed income, were "substantially equivalent." Id. at 338-44, 116 S.Ct. at 857-60 "Although we found such equivalence in the sales/use tax combination at issue in [Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937) ], our more recent cases have shown extreme reluctance to recognize new compensatory categories." Id. at 338, 116 S.Ct. at 857. The Supreme Court then concluded: "While we doubt that such a showing can ever be made outside the limited confines of sales and use taxes, it is enough to say here that no such showing has been made." Id. at 344, 116 S.Ct. at 860.
Like the North Carolina intangibles tax, the Alabama franchise tax facially discriminates against interstate commerce. The State imposes the domestic corporation franchise tax on a base generally equal to the par value of the corporation's stock. See Ala. Code 1975, § 40-14-40 (imposing a 1% tax on the capital stock of domestic corporations). It imposes the foreign corporation franchise tax on a base generally equal to the portion of a corporation's total capital (that is, the par value of its stock, plus surplus, plus long-term debt, etc.) employed in the state, computed in accordance with generally accepted accounting principles. See Ala.Code 1975, § 40-14-41 (imposing a 0.3% tax on the capital employed in Alabama by foreign corporations). It is not facially apparent that application of the foreign franchise tax rate (0.3%) to the much larger base of par value plus other items such as surplus and long-term debt merely equalizes the burden produced by the application of the domestic franchise tax rate (1%) to the easily manipulable base of par value. Simply by changing its state of incorporation from Alabama to any other state, a corporation operating in Alabama subjects numerous additional items on its balance sheet (e.g., surplus, long-term debt) to Alabama franchise taxation. The franchise tax facially discriminates against interstate commerce, and arguments over the degree of the discrimination do not affect this characterization. See, e.g., Associated Indus., *1011 511 U.S. at 650, 114 S.Ct. at 1822 ("[A]ctual discrimination, wherever it is found, is impermissible, and the magnitude and scope of the discrimination have no bearing on the determinative question of whether discrimination has occurred.") (citing Maryland v. Louisiana, 451 U.S. at 760, 101 S.Ct. at 2136 (1981)). Accordingly, Alabama's discriminatory foreign franchise tax can withstand a challenge under the Dormant Commerce Clause challenge only if that tax may be properly characterized as a "compensatory tax."
The State asserts that the higher rate of the domestic franchise tax and the additional tax imposed only on the shares of domestic corporations combine to impose an intrastate burden for which the higher foreign franchise tax compensates. See Ala.Code 1975, § 40-14-70 (imposing a shares tax by subjecting to property taxes 20% of a base roughly equal to the book value of the domestic corporation). Although this Court accepted a similar argument in Reynolds Metals, 558 So.2d at 382-90, the Supreme Court has since clarified and narrowed the definition of a compensatory tax. Fulton, 516 U.S. at 332-33, 116 S.Ct. at 854-55; Oregon Waste, 511 U.S. at 102, 114 S.Ct. at 1351. Assuming, arguendo, that the State has satisfied the first prong of Fulton, 516 U.S. at 332, 116 S.Ct. at 854, by identifying intrastate taxes for which the discriminatory interstate tax is meant to compensate, the discriminatory interstate tax does not meet the second and third prongs of the Supreme Court's narrow definition.
The State has failed to demonstrate that its tax on interstate commercethat is, the portion of the foreign franchise tax produced by the higher tax baseroughly approximates, but does not exceed, the portion of the intrastate domestic franchise tax produced by the higher rate and the intrastate corporate shares tax. See Fulton, 516 U.S. at 332-33, 116 S.Ct. at 854-55. In the face of the State's indefinite assertion that the general burden of the domestic franchise tax and the shares tax roughly approximates the burden imposed by the foreign franchise tax, the Taxpayers offer substantial evidence supporting the proposition that the foreign franchise tax exceeds any intrastate burden. The State, and not this Court, bears the exacting burden of showing that the interstate tax roughly approximates, but does not exceed, the identified intrastate taxes. See Oregon Waste, 511 U.S. at 105, 114 S.Ct. at 1353 (stating that the Supreme Court will not "plunge ... into the morass of weighing comparative tax burdens"). The State has not borne its burden, and therefore has not met the second prong of Fulton.
The State also fails to show that the events taxed by Alabama's intrastate taxes and the interstate tax are "substantially equivalent." See Fulton, 516 U.S. at 333, 336-38, 116 S.Ct. at 855, 856-57. Unlike the mirror-image sales and use taxes approved in Silas Mason, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814, which were, generally speaking, imposed on in-state and out-of-state sales, the foreign franchise tax is imposed on the event of doing business in the State, while the shares tax is imposed on the ownership of shares of stock. These two significantly different taxes cannot be viewed as "mutually exclusive proxies" for each other. See Fulton, 516 U.S. at 333, 338-40, 116 S.Ct. at 855, 857-58. The State has not met the third prong of Fulton.
The Alabama foreign franchise tax cannot be sustained as a compensatory tax. Accordingly, I would reverse the judgment of the trial court and remand for a determination of the proper remedy.
I dissent.
KENNEDY and BUTTS, JJ., concur.
NOTES
[1] These included: BellSouth Corporation; BellSouth Services, Inc.; BellSouth Financial Services Corporation; BellSouth Advertising & Publishing Company; BellSouth Resources, Inc.; Alabama Cellular Services, Inc.; Sunlink, Inc.; and TechSouth, Inc.
[2] I note that, according to the record, the same attorney represented South Central Bell; BellSouth Corporation; BellSouth Services, Inc.; BellSouth Financial Services Corporation; BellSouth Advertising & Publishing Company; BellSouth Resources, Inc.; Alabama Cellular Services, Inc.; SunLink, Inc.; and TechSouth, Inc., before the trial court. Further, the same attorney represented CSX Transportation, Inc., in the cases it filed; see infra. That attorney continued to represent all the plaintiffs in this consolidated case through proceedings before the trial court, and he, along with additional counsel, continues to represent the plaintiffs before this Court.
[3] See, generally, Maryland v. Baltimore Radio Show, Inc., 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950), for a discussion of the effect of a denial of certiorari review.
[4] The Supreme Court noted that the identified intrastate tax must serve a legitimate purpose for which the State could impose a burden on interstate commerce. Fulton, 516 U.S. at 334-36, 116 S.Ct. at 855-56. The Supreme Court rejected North Carolina's argument that its general corporate income tax supported a capital market that the corporations had availed themselves of by selling stock to North Carolina residents. Id. The Supreme Court held that the relationship between North Carolina's general corporate income tax and its capital markets was too tenuous to allow a general tax on intrastate activities to serve as a complement to a specific discriminatory tax on interstate commerce. Id. at 336, 116 S.Ct. at 856.