# SOUTH CENTRAL BELL TELEPHONE CO. ET AL. *v.* ALABAMA ET AL.

No. 97–2045.   Argued January 19, 1999—Decided March 23, 1999

BREYER, J., delivered the opinion for a unanimous Court. O'CONNOR, J., *post*, p. 171, and THOMAS, J., *post*, p. 171, filed concurring opinions.

*Mark L. Evans* argued the cause for petitioners. With him on the briefs were *Henk Brands, Walter Hellerstein, Charles R. Morgan, Mark D. Hallenbeck, Albert G. Moore, Jr., Richard W. Bell, Walter R. Byars, David J. Bowling,* and *Courtney Hyers.*

*Charles J. Cooper* argued the cause for respondents. With him on the brief were *Bill Pryor*, Attorney General of Alabama, *Ron Bowden* and *Dan E. Schmaeling*, Assistant Attorneys General, *Michael W. Kirk*, and *David H. Thompson.*\*

JUSTICE BREYER delivered the opinion of the Court.

The basic question in this case is whether the franchise tax Alabama assesses on foreign corporations violates the Commerce Clause. We conclude that it does.

## I

Alabama requires each corporation doing business in that State to pay a franchise tax based upon the firm's capital. A domestic firm, organized under the laws of Alabama, must pay tax in an amount equal to 1% of the par value of the firm's stock. Ala. Const., Art. XII, § 229; Ala. Code § 40–14–40 (1993); App. to Pet. for Cert. 50a, 52a, 61a (Stipulated Facts). A foreign firm, organized under the laws of a State other than Alabama, must pay tax in an amount equal to 0.3% of the value of "the actual amount of capital employed" in Alabama. Ala. Const., Art. XII, § 232; Ala. Code § 40–14–41(a) (Supp. 1998). Alabama law grants domestic firms considerable leeway in controlling their own tax base and tax liability, as a firm may set its stock's par value at a level well below its book or market value. App. to Pet. for Cert. 52a–53a (Stipulated Facts). Alabama law does not grant a foreign firm similar leeway to control its tax base, however, as the value of the "actual" capital upon which Alabama calculates the foreign franchise tax includes not only the value of capital stock but also other accounting items (*e. g.*, long-term debt, surplus), the value of which depends upon the

---

\*Briefs of *amici curiae* urging reversal were filed for Avon Products, Inc., et al. by *William L. Goldman;* for Tax Executives Institute, Inc., by *Timothy J. McCormally* and *Mary L. Fahey;* and for the Committee on State Taxation by *William D. Peltz* and *Jeffrey A. Friedman.*

firm's financial status. *Id.*, at 53a–54a; Ala. Code §§ 40–14–41(b)(1)–(5), (c) (Supp. 1998).

In 1986, the Reynolds Metals Company and three other foreign corporations sued Alabama's tax authorities, seeking a refund of the foreign franchise tax they had paid on the ground that the tax discriminated against foreign corporations. Although the tax favored foreign firms in some respects (granting them a lower tax rate and excluding any capital not employed in Alabama), that favorable treatment was more than offset by the fact that a domestic firm, unlike a foreign firm, could shrink its tax base significantly simply by setting the par value of its stock at a low level. As a result, Reynolds Metals said, the tax burden borne by foreign corporations was much higher than the burden on domestic corporations, and the tax consequently violated both the Commerce and Equal Protection Clauses. U. S. Const., Art. I, § 8, cl. 3, and Amdt. 14, § 1.

The Alabama Supreme Court rejected these claims. *White* v. *Reynolds Metals Co.*, 558 So. 2d 373 (1989). Without denying that the franchise tax imposed a special burden upon foreign corporations, the court nonetheless thought that this special burden simply offset a different burden imposed exclusively upon domestic corporations by Alabama's "domestic shares tax." This latter tax is a property tax on shares of domestic stock; it is assessed against shareholders based upon the value of the shares they hold, but in practice it is normally paid by the corporation itself. *Id.*, at 386–388 (citing, *e. g., Gregg Dyeing Co.* v. *Query*, 286 U. S. 472 (1932) (permitting taxes that discriminate against interstate commerce when they compensate for burdens placed uniquely upon domestic commerce)). Any remaining discrimination, the court concluded, was constitutionally insignificant. 558 So. 2d, at 388–390.

While the Alabama courts were considering *Reynolds Metals*, a different foreign corporation, South Central Bell Telephone Company, brought the lawsuit now before us.

Bell asserted the same Commerce Clause and Equal Protection Clause claims as had Reynolds Metals, though in respect to different tax years. Bell initially agreed to hold its suit in abeyance pending the resolution of Reynolds Metals' claims. Then, after the Alabama Supreme Court decided against the taxpayers in *Reynolds Metals*, Bell (joined by other foreign corporations with similar claims) went to trial.

The Bell plaintiffs introduced evidence designed to show that the empirical premises that underlay *Reynolds Metals* were wrong: Despite the differences in franchise tax rates, Alabama's franchise tax scheme in practice discriminates substantially against foreign corporations, and the Alabama tax on shares of domestic corporations does not offset the discrimination in the franchise tax. The Alabama trial court agreed with the Bell plaintiffs that their evidence, taken together with this Court's recent Commerce Clause cases, "clearly and abundantly demonstrates that the franchise tax on foreign corporations discriminates against them for no other reason than the state of their incorporation." Memorandum Opinion in App. to Pet. for Cert. 21a–22a (hereinafter Mem. Op.) (citing *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U. S. 93 (1994); *Associated Industries of Mo. v. Lohman*, 511 U. S. 641 (1994); *Fulton Corp. v. Faulkner*, 516 U. S. 325 (1996)). But the trial court nonetheless dismissed their claims for a *different* reason, namely, that given the Alabama Supreme Court's decision in *Reynolds Metals*, "the Taxpayer[s'] claims [in this case] are barred by *res judicata.*" Mem. Op. 17a.

The Alabama Supreme Court affirmed the trial court by a vote of 5 to 4. The majority's decision cited *Reynolds Metals* and a procedural rule regarding summary dispositions and simply said, "PER CURIAM. AFFIRMED. NO OPINION." 711 So. 2d 1005 (1998). One justice concurred specially to say that by requesting that their case be held in abeyance until *Reynolds Metals* was resolved, the Bell

plaintiffs had agreed to be bound by *Reynolds Metals.* 711 So. 2d, at 1005–1007 (opinion of Maddox, J.). Three dissenters wrote that given the differences between this case and *Reynolds Metals* (*e. g.,* different tax years, different plaintiffs), res judicata could not bind the Bell plaintiffs. 711 So. 2d, at 1008 (opinion of See, J.). On the merits, the dissenters concluded that the franchise tax violated the Commerce Clause. See *id.,* at 1008–1011. (One other justice dissented without opinion.)

We granted the Bell plaintiffs' petition for certiorari, agreeing to decide (1) whether the Alabama courts' refusal to permit the Bell plaintiffs to raise their constitutional claims because of res judicata "deprived" the Bell plaintiffs "of the due process of law guaranteed by the Fourteenth Amendment," Pet. for Cert. (i); see *Richards* v. *Jefferson County,* 517 U. S. 793 (1996); and (2) whether the franchise tax "impermissibly discriminates against interstate commerce, in violation of the Commerce Clause," Pet. for Cert. (i). We decide both questions in favor of the Bell plaintiffs.

## II

### A

At the outset, the respondents—the State of Alabama and its State Department of Revenue (collectively, the State)—argue that this Court lacks "appellate jurisdiction over this case." Brief for Respondents 15. The State points to the Eleventh Amendment, which provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."

The State claims that this Amendment's literal language applies here because this case began in state court as a suit brought against one State, namely, Alabama, by citizens of another; because we, in hearing this case, would be exercis-

ing the "Judicial power of the United States"; and because Alabama has not waived its right to object to our exercise of that power.

This Court, however, has recently considered and rejected the very argument that the State now makes. In *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation,* 496 U. S. 18 (1990), we unanimously held that "[t]he Eleventh Amendment does not constrain the appellate jurisdiction of the Supreme Court over cases arising from state courts." *Id.,* at 31. We explained:

> "[I]t is 'inherent in the constitutional plan' . . . that when a state court takes cognizance of a case, the State assents to appellate review by this Court of the federal issues raised in the case 'whoever may be the parties to the original suit, whether private persons, or the state itself.'" *Id.,* at 30 (quoting *Principality of Monaco* v. *Mississippi,* 292 U. S. 313, 329 (1934); *Proprietors of Charles River Bridge* v. *Proprietors of Warren Bridge,* 11 Pet. 420, 585 (1837) (Story, J., dissenting)).

Our holding in *McKesson* confirmed a long-established and uniform practice of reviewing state-court decisions on federal matters, regardless of whether the State was the plaintiff or the defendant in the trial court. 496 U. S., at 28; accord, *General Oil Co.* v. *Crain,* 209 U. S. 211, 233 (1908) (Harlan, J., concurring) ("[I]t was long ago settled" that the Eleventh Amendment does not bar "a writ of error to review the final judgment of a state court").

Although the State now asks us to "overrule *McKesson,*" Brief for Respondents 27, it does not provide a convincing reason why we should revisit that relatively recent precedent, and we shall not do so. Cf. *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833, 854–855 (1992) (considerations relevant to overruling precedent include workability of prior precedent, its relation to other changes in law, and relevant reliance).

B

The State, in opposing Bell's petition for certiorari, argued that the Alabama Supreme Court's decision rested upon an adequate state ground, namely, state-law principles of res judicata. It now believes, however, that the Alabama Supreme Court's decision rejected the plaintiffs' claims on their merits and relied upon *Reynolds Metals* under principles of *stare decisis*, not res judicata. Brief for Respondents 3. For that reason, the State "offer[s] no defense of the decision as a valid application of the doctrine of *res judicata.*" *Ibid.* Nor do we believe a valid defense could be made. See *Richards* v. *Jefferson County, supra.*

In *Richards,* we considered an Alabama Supreme Court holding that state-law principles of res judicata prevented certain taxpayers from bringing a case (which we will call Case Two) to challenge on federal constitutional grounds a state tax that the Alabama Supreme Court had upheld in an earlier case (Case One) brought by different taxpayers. We held that the Fourteenth Amendment forbade this "extreme" application of state-law preclusion (res judicata) principles, *id.,* at 797, because the plaintiffs in Case Two were "strangers" to the earlier judgment, *id.,* at 802.

We cannot distinguish *Richards* from the case before us. In *Richards,* we pointed out that the taxpayers in Case One "did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any . . . taxpayers who were nonparties." *Id.,* at 801. We added that the taxpayers in Case One did not understand their suit "to be on behalf of" the different taxpayers involved in Case Two, nor did the Case One court make any special effort "to protect the interests" of the Case Two plaintiffs. *Id.,* at 802. As far as we are aware, the same can be said of the circumstances now before us. The two relevant cases involve different plaintiffs and different tax years. Neither is a class action, and no one claims that there

is "privity" or some other special relationship between the two sets of plaintiffs. Hence, the Case Two plaintiffs here are "strangers" to Case One, and for the reasons we explained in *Richards*, they cannot be bound by the earlier judgment.

The Alabama trial court tried to distinguish the circumstances before us from those in *Richards* by pointing out that the plaintiffs here were aware of the earlier Reynolds Metals litigation and that one of the Reynolds Metals lawyers also represented the Bell plaintiffs. See Mem. Op. 18a–19a. These circumstances, however, created no special representational relationship between the earlier and later plaintiffs. Nor could these facts have led the later plaintiffs to expect to be precluded, as a matter of res judicata, by the earlier judgment itself, even though they may well have expected that the rule of law announced in *Reynolds Metals* would bind them in the same way that a decided case binds every citizen.

A concurring justice in the Alabama Supreme Court concluded that the Bell plaintiffs had "agreed that the final decision in *Reynolds Metals* would be controlling" when, in a letter to the trial court, they "specifically requested that [their] case be held in abeyance until *Reynolds Metals* was decided." 711 So. 2d, at 1006–1007 (opinion of Maddox, J.). That letter also said, however, that if "'either party desires to proceed at a later date, with the Court's permission this case would be activated.'" *Id.*, at 1006. Given this latter statement, the letter is no more than a routine request for continuance. It does not distinguish *Richards*.

In sum, if the Alabama Supreme Court's holding in this case rests on state-law claim or issue preclusion (res judicata or collateral estoppel), that holding is inconsistent with *Richards* and with the Fourteenth Amendment's due process guarantee.

## C

Turning to the merits, we conclude that this Court's Commerce Clause precedent requires us to hold Alabama's franchise tax unconstitutional. Alabama law defines a domestic corporation's tax base as including only one item—the par value of capital stock—which the corporation may set at whatever level it chooses. A foreign corporation's tax base, on the other hand, contains many additional balance sheet items that are valued in accordance with generally accepted accounting principles, rather than by arbitrary assignment by the corporation. Accordingly, as the State has admitted, Alabama law gives domestic corporations the ability to reduce their franchise tax liability simply by reducing the par value of their stock, while it denies foreign corporations that same ability. App. to Pet. for Cert. 52a–53a (Stipulated Facts). And no one claims that the different tax rates for foreign and domestic corporations offset the difference in the tax base. The tax therefore facially discriminates against interstate commerce and is unconstitutional unless the State can offer a sufficient justification for it. Cf. *Fulton Corp. v. Faulkner*, 516 U. S. 325 (1996) (state tax scheme requiring shareholders in out-of-state corporations to pay tax on a higher percentage of share value than shareholders of corporations operating solely within the State facially discriminated in violation of the Commerce Clause). This discrimination is borne out in practice, as the record, undisputed here, shows that the average domestic corporation pays only one-fifth the franchise tax it would pay if it were treated as a foreign corporation. See App. to Pet. for Cert. 36a (plaintiffs' statement of facts); Mem. Op. 21a, and n. 7 (adopting plaintiffs' statement of facts).

The State cannot justify this discrimination on the ground that the foreign franchise tax is a "complementary" or "compensatory" tax that offsets the tax burden that the domestic shares tax imposes upon domestic corporations. *E. g., Hen-*

*neford* v. *Silas Mason Co.,* 300 U. S. 577 (1937) (upholding a facially discriminatory use tax as "complementary" to a domestic sales tax). Our cases hold that a discriminatory tax cannot be upheld as "compensatory" unless the State proves that the special burden that the franchise tax imposes upon foreign corporations is "roughly . . . approximate" to the special burden on domestic corporations, and that the taxes are similar enough "in substance" to serve as "mutually exclusive" proxies for one another. *Oregon Waste Systems,* 511 U. S., at 103; accord, *Fulton, supra,* at 332–333.

In this case, however, the relevant tax burdens are *not* "roughly approximate." See App. to Pet. for Cert. 36a–37a (plaintiffs' statement of facts, showing that the foreign franchise tax burden far exceeds the domestic franchise tax and the domestic shares tax combined); Mem. Op. 21a, n. 7 (adopting plaintiffs' statement of facts); cf. 711 So. 2d, at 1011 (See, J., dissenting) (in the face of the State's "indefinite assertion," plaintiffs offered "substantial evidence . . . that the foreign franchise tax exceeds any intrastate burden" imposed through the higher franchise tax rate and the domestic shares tax). And the State has made no effort to persuade this Court otherwise.

Nor are the two tax burdens similar in substance. Alabama imposes its foreign franchise tax upon a foreign firm's decision to do business in the State; Alabama imposes its domestic shares tax upon the ownership of a certain form of property, namely, shares in domestic corporations. Compare Ala. Code § 40–14–41 with § 40–14–70 (1993 and Supp. 1998). No one has explained to us how the one could be seen as a "proxy" for the other.

Rather than dispute any of these matters, the State instead says, with "respect to the merits," that "the flaw in petitioners' claim lies not in the application to Alabama's corporate franchise tax of this Court's recent negative Commerce Clause cases; the flaw lies rather in the negative Commerce Clause cases themselves." Brief for Respondents 3.

The State adds that the Court should "formally reconsider" and "abando[n]" its negative Commerce Clause jurisprudence." *Id.*, at 3, 28. We will not entertain this invitation to reconsider our longstanding negative Commerce Clause doctrine, however, because the State did not make clear it intended to make this argument until it filed its brief on the merits. We would normally expect notice of an intent to make so far-reaching an argument in the respondent's opposition to a petition for certiorari, cf. this Court's Rule 15.2, thereby assuring adequate preparation time for those likely affected and wishing to participate. We are not aware of any convincing reason to depart from that practice in this case. And consequently we shall not do so.

For these reasons, the judgment of the Alabama Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, concurring.

I join the opinion of the Court, and I agree that the State's failure to properly raise its challenge to our negative Commerce Clause jurisprudence supports a decision not to pass on the merits of this claim. *Ante* this page. I further note, however, that the State does nothing that would persuade me to reconsider or abandon our well-established body of negative Commerce Clause jurisprudence.

JUSTICE THOMAS, concurring.

I join the opinion of the Court. I agree that it would be inappropriate to take up the State's invitation to reconsider our negative Commerce Clause doctrine in this case because "the State did not make clear it intended to make this argument until it filed its brief on the merits." *Ante* this page.