Arthur Redmond and his wife, Joan Redmond, appeal from a judgment denying their request for declaratory and injunctive relief as to the status of certain lots, namely, Lots 18 through 25, on a platted subdivision, as shown on the "Hoiles Replat of Climes Addition to Josephine, *Page 1147 
Ala." (the "Climes Addition"). We affirm.
At the outset, we acknowledge that to affirm the judgment of the trial court we must overrule Hoiles v. Taylor, 278 Ala. 515,179 So.2d 148 (1965), which determined the status of Lots 21 through 25 of the Climes Addition. We do not lightly esteem the doctrine of stare decisis. However, a number of factors militate in favor of overruling Hoiles. To illustrate these factors and to lay a proper factual predicate for our opinion in this case, it is necessary to discuss in some detail the facts and issues inHoiles.
On September 28, 1943, a surveyor certified a map of the Climes Addition. On December 18, 1943, Walter W. Hoiles filed that map "for record" in the office of the Baldwin Probate Court.278 Ala. at 516, 179 So.2d at 149.[1] That plat contained 26 contiguous lots, 50 feet in width, of various lengths, running north and south. 278 Ala. at 520, 79 So.2d 153 (Exhibit B). (Two plat maps, labeled as Exhibits A and B, were attached as appendices to the Hoiles opinion. 278 Ala. at 519-20,179 So.2d at 152-53.) The lots were bounded on the south by Bay Shore Boulevard. 278 Ala. at 520, 179 So.2d at 153. "The south side of this Boulevard borders Bay La Launch — the water's edge."278 Ala. at 516, 179 So.2d at 149.
On August 20, 1947, over three years after filing the map of the Climes Addition, Walter W. Hoiles filed a second map. This second map was of a platted subdivision named "Bay View Terrace."278 Ala. at 519, 179 So.2d 152 (Exhibit A). In Hoiles, this Court described Bay View Terrace as follows:
 "The lots in the plat are each 50 feet wide (North and South), and 147 feet (East and West). There is a row of 30 lots bordering the east side of Beach Avenue (29 feet in width) while there is another row of 30 lots that border the west side of Pine Avenue, 30 feet in width. The east and west ends of these lots are contiguous. The two end lots on the southside are numbered 30 and 31, a total of 294 feet east and west. From the west side of Beach Avenue (running north and south) to the east side of Pine Street (also running north and south) is a distance of 363 feet. Each street is 1505 feet long-running from the north lots to the south lots."
Hoiles, 278 Ala. at 516, 179 So.2d at 149 (emphasis added).
Bay View Terrace bounded the lots of the Climes Addition onthe north side of the Climes Addition. However, the Bay View Terrace map did not show the lots of the Climes Addition. Instead, where the lots of the Climes Addition should have appeared on the Bay View Terrace map, the Bay View Terrace map showed only an area marked "Beach." Hoiles described the "Beach" area as follows:
 "Appearing on the map, contiguous to and lying immediately south of lots 30 and 31 is an area marked `BEACH.' This area so marked is identified by a line that joins the line marking the east side of Pine Avenue and by another line on the west that is an extension of the west line marking Beach Avenue. These two lines extend south to the water's edge (Bay La Launch). There is another line running east and west along the water's edge that connects these two north and south lines. This marked and identified area between the two extended lines is the subject of this litigation."
Id. (emphasis added). Thus, the Beach consists of the area bounded by Bay View Terrace Lots 30 and 31 on the north, the east side of Pine Avenue on the east, the west side of Beach Avenue on the west, and Bay Shore Boulevard, or Bay La Launch, on the south. Consequently, it *Page 1148 
also affects Climes Addition Lots 18 through 25.
Walter W. Hoiles originally owned the property marked off in both plat maps. Id. After filing both plat maps, he began conveying subdivision lots platted in both maps. For example, "on August 23, 1958, Hoiles conveyed to his wife lots 21 through 25 in [the Climes] Addition." Id. "By successive conveyances, Hoiles and his wife thereafter conveyed the lots to the other parties respondent [in Hoiles]." Id.
The litigation in Hoiles was commenced by H.L. Taylor, E.M. Davidson, and Amos Garrett, owners of Bay View Terrace lots bounding the "Beach" — or a portion of the Climes Addition — on the north, that is, "lots lying between the two north and south avenues (Beach and Pine) of Bay View Terrace." Id. The respondents named in the complaint, which was filed as an exhibit in this case, were Walter W. Hoiles, Beatrice V. Hoiles, Richard A. Hoiles, Evelyn Hoiles, Claude E. Bankester, Katherine Bankester, Eamel F. Bankester, and Eleanor Bankester. The complainants sought a decree declaring that a portion of the area designated "Beach" on the Bay View Terrace map, specifically, that area affecting lots 21, 22, 23, 24, and 25 of the Climes Addition, had been dedicated as a "public facility, [for] the convenience and use of the owners or occupants of the lots platted in the Bay View Terrace." Id.
On January 18, 1965, the trial court entered a decree stating:
 "4. On August 23, 1958, Walter W. Hoiles and Beatrice V. Hoiles conveyed to Beatrice V. Hoiles Lots 21 through 25 in Hoiles replat of Climes Addition to Josephine, Alabama. . . . The said deed was [a] voluntary conveyance to said Beatrice V. Hoiles without any consideration having been paid by her to the grantor, Walter W. Hoiles.
 "5. On August 23, 1958, Beatrice V. Hoiles conveyed to the respondents, Richard A. Hoiles and Evelyn Hoiles, Lot 21 in Hoiles replat . . . and on July 1, 1960, Beatrice V. Hoiles and Walter W. Hoiles executed a correction deed to the said Richard A. Hoiles and Evelyn Hoiles which corrected the aforesaid deed by adding the name of the respondent, Walter W. Hoiles, as a grantor in the said deed. Both of the said deeds were voluntary conveyances on the part of the grantors to the said respondents and no consideration was paid therefor.
 "6. On July 1, 1960, Beatrice V. Hoiles and Walter W. Hoiles conveyed to the respondents, Claude E. Bankester and Katherine Bankester, Lot 24 in Hoiles replat. . . . A good and valuable consideration was paid by the respondents, Claude E. Bankester and Katherine Bankester, to the respondents, Walter W. Hoiles and Beatrice V. Hoiles, and the said deed was not a voluntary conveyance
to the said respondents.
 "7. On July 1, 1960, Beatrice V. Hoiles and Walter W. Hoiles conveyed to the respondents, Eamel F. Bankester and Eleanor Bankester, Lot 22 in Hoiles replat. . . . The said deed was a voluntary conveyance to the said respondents and no consideration was paid therefor.
 "8. At the time the respondent, Walter W. Hoiles, conveyed the said property known as Bay View Terrace to the said complainants he represented to each of them that the property lying adjacent to and immediately south of the subdivision known as Bay View Terrace and which is described as Lots 21, 22, 23, 24 and 25 of Hoiles replat of Climes Addition to Josephine and the property lying immediately South thereof to the North line of Bay La Launch had been dedicated to the public as a beach. . . .
 "9. That on the dates of the various conveyances from the respondent, Walter W. Hoiles, to the complainants, the said Walter W. Hoiles was the owner of Lots 21, 22, 23, 24 and 25 of Hoiles replat of Climes Addition to Josephine and the property lying immediately *Page 1149 
South thereof to the North line of Bay La Launch.
 "It is, therefore, ORDERED, ADJUDGED AND DECREED by the court as follows:
 "A. The deed from Walter W. Hoiles and Beatrice V. Hoiles to Beatrice V. Hoiles dated August 23, 1958, [purporting to convey Lots 21, 22, 23, 24, and 25] . . . is hereby set aside and held to be null and void.
 "B. The deed from Beatrice V. Hoiles to Richard A. Hoiles and Evelyn Hoiles dated August 23, 1958, [purporting to convey Lot 21] . . . [is] hereby set aside and held to be null and void.
 "C. The deed from Beatrice V. Hoiles and Walter W. Hoiles to Claude E. Bankester and Katherine Bankester dated July 1, 1960, [conveying Lot 24] . . . was made on the payment of good and valuable consideration and the said deed is hereby confirmed.
 "D. The deed from Beatrice V. Hoiles and Walter W. Hoiles to Eamel F. Bankester and Eleanor Bankester dated July 1, 1960, [purporting to convey Lot 22] . . . is hereby set aside and held to be null and void.
 "E. Lots 21, 22, 23 and 25 in Hoiles replat of Clime Addition . . . are hereby declared to [be] dedicated to the public as a beach by virtue of the recording of the subdivision of Bay View Terrace . . . and the conveyances by the respondent, Walter W. Hoiles to the complainant[s]. . . ."
(Emphasis added.)
The decree was duly recorded in the Baldwin Probate Court, and the respondents appealed. The complainants, however, did not cross appeal that portion of the decree adjudicating the status of Lot 24. This Court affirmed the decree of the trial court.
After that case was decided, Richard A. Hoiles, one of the respondents therein, executed instruments purporting to convey Lots 21, 22, 23, and 25. More specifically, on November 19, 1990, he purported to convey by a warranty deed Lot 21 to Roger K. Seals and his wife, Saralene Seals. By quitclaim deeds, Richard A. Hoiles purported to convey Lots 22 and 23 to his children, Jeffery Dennis Hoiles, Richard R. Hoiles, Shandra B. Etheridge, and Phyllis Ann Hoiles on August 24, 1992; and Lot 25 to his sister, Eleanor (Hoiles) Bankester. Finally, Lot 24 was conveyed by Claude and Katherine Bankester to Thomas T. McCoy on April 10, 1973.
On November 27, 1995, the Redmonds, owners of Lots 31 and 32 in Bay View Terrace, commenced this action, raising once again the issue of the status of Lots 21, 22, 23, 24, and 25. In addition, the Redmonds sought declaratory and injunctive relief as to Lots18, 19, and 20. The complaint named as defendants Eleanor (Hoiles) Bankester, Jeffery Dennis Hoiles, Roger K. Seals, Saralene B. Seals, Hugh M. Dickson, Merle J. Julka, and Julia A. Julka, who, the complaint alleged, claimed title to the lots. More specifically, the Redmonds sought a judgment declaring that the use of Lots 18 through 25, which were designated on the Bay View Terrace plat map as "Beach," for any purpose "other than an open beach is prohibited." They also sought to enjoin those claiming to be the current title holders from maintaining "residential structures" on the lots or using the lots in any manner inconsistent with the use of a "public beach."
After a trial at which evidence was presented ore tenus, the trial court in this case found the following facts:
 "10. The Hoiles Replat of [the Climes] Addition has never been vacated.
 "11. Since the time that each Defendant and their respective predecessors in interest acquired title to the various lots of the [Climes] Addition, these Defendants have paid property taxes which have been assessed by Baldwin County, Alabama.
". . . . *Page 1150 
 "13. Baldwin County has never maintained or claimed that the area in question was a public beach area.
 "14. The area in question has never been used by the general public as a beach area."
(Emphasis added.) The trial court then concluded:
 "1. Hoiles Replat of [Climes] Addition has never been vacated. Accordingly, at the time the plat of Bay View Terrace was recorded, the area marked as `beach' on the plat of Bay View Terrace had already been platted and subdivided into lots. The placement of the word `beach' did not vacate Hoiles Replat of [Climes] Addition.
". . . .
 "Now therefore it is hereby ORDERED, ADJUDGED and DECREED that Defendants Merle J. Julka and Julia A. Julka are the true and rightful owners of Lot 18 . . ., that Jane H. Dixon is the true and rightful owner of Lots 19 and 20 . . ., that Roger K. Seals and Saralene B. Seals are the true and rightful owners of Lot 21 . . ., that Defendant Jeffery Dennis Hoiles is the true and rightful owner of Lots 22 and 23 . . ., that Defendant Thomas T. McCoy is the true and rightful owner of Lot 24 . . ., and that Eleanor Bankester is the true and rightful owner of Lot 25. . . . It is further ORDERED, ADJUDGED and DECREED that the area marked as `beach' on the plat of Bay View Terrace is not public beach and that title to said property is vested in the Defendants as referenced in this order."
(Emphasis added.) The trial court made no reference to this Court's opinion in Hoiles.
The Redmonds appealed, contending that the trial court's judgment in this case is directly contrary to this Court's holding in Hoiles. Indeed, although they concede that Lots 18, 19, and 20, which are involved in this case, were not involved inHoiles, they urge us to extend Hoiles to include those lots. Thus, they insist, the trial court's judgment must be reversed on the authority of Hoiles. We agree with the Redmonds that the trial court's order is directly contrary to Hoiles. We do not agree, however, that the conflict requires a reversal, for we hereby overrule Hoiles.
With all "due regard to the principle of stare decisis," we think it is incumbant on this Court to "overrule prior decisions when we are convinced beyond peradventure of doubt that such decisions were wrong when decided or that time has [effected]such change as to require a change in the law." Beasley v.Bozeman, 294 Ala. 288, 291, 315 So.2d 570, 572 (1975) (Jones, J., concurring specially) (emphasis added). "Stare decisis is a noble principle, but it is not case-hardened [res judicata]."[2]Id. Not only is Hoiles *Page 1151 
beset by substantial logical and legal weaknesses, but the passage of time and change of circumstances have had a substantial effect on the subject of this litigation.
The first problem with Hoiles is that it affirms a judgment that is internally inconsistent. Specifically, the trial court declared the purported conveyances of Lots 21, 22, 23, and 25 to be null and void, those lots having been "dedicated," it declared, "to the public as a beach by virtue of the recording of thesubdivision of Bay View Terrace . . . and the conveyances by . . .Walter W. Hoiles to the complainant[s]." (Emphasis added.) Simultaneously, however, it declared the purported conveyance of Lot 24 to be valid, because, it reasoned, that conveyance wasaccompanied by consideration. Thus, the court treated Lot 24, which lies between Lot 23 and Lot 25, in a manner different from the manner in which it treated the other lots, only because of the consideration exchanged for Lot 24.
We fail to see how the conveyance of Lot 24, which is clearly located within the area the trial court declared to be dedicated as a public beach, would be validated merely by the exchange of consideration. In other words, if there had been a valid dedication of the area comprising Lots 21, 22, 23, and 25, then, likewise, Lot 24 would have been dedicated and the purported post-dedication conveyance to the Bankesters would be invalid.
Additionally, in Hoiles both this Court and the trial courtoverlooked Ala. Code 1958 (Recompiled), Tit. 56, § 16,currently, Ala. Code 1975, § 35-2-53, which sets forthspecific procedures by which a plat map may be vacated. Title 56, § 16, provided:
 "Any plat or map, whether or not executed and recorded as provided in this chapter, may be vacated by the owner, his executor, administrator or guardian of the lands at any time before the sale of any lot therein by a written instrument declaring the same to be vacated, executed, acknowledged, and recorded in like manner as conveyances of land which declaration, being duly recorded, shall operate to destroy the force and effect of the recording of the plat or map so vacated, and to divest all *Page 1152 
public rights in the streets, alleys, and public grounds and all dedications laid out or described in such plat or map. When lots have been sold, the plat or map may be vacated, in the manner herein provided by all the owners of lots in such plat or map joining in the execution of such writing."
Neither the decree of the trial court in Hoiles nor the opinion of this Court in that case noted any findings relevant as to whether the Climes Addition had — or had not — been vacated in accordance with § 16.
To be sure, there was no cross appeal from the decree declaring that Claude and Katherine Bankester held a valid title to Lot 24. However, this Court merely compounded the problem by the rationale expressed in the opinion. Specifically, that opinion stated:
 "Respondent Walter Hoiles, when he approved the Bay View Terrace map or plat, knew about the [Climes] Addition and the division of the area into lots. He approved the engineer's work which obliterated the lots here in litigation (in [the Climes] Addition) and converted them into a `Beach' area.
 "Thereafter, he could not withdraw or cancel such dedication by a sale of these lots to respondents here on appeal; nor could he cancel out such dedication except in the manner provided by law."
278 Ala. at 517-18, 179 So.2d at 151. (Emphasis added.) The problem is that this rationale would also apply to the purported conveyance of Lot 24, which the trial court held — with this Court's affirmance — to be valid. In these respects, the opinion of this Court was as faulty as the decree of the trial court.
But changed circumstances also militate against the continued recognition of Hoiles. The parties in that case essentially ignored it; the Hoiles respondents continued to treat the lots as their own, purporting to convey them to the parties involved in this present case. Indeed, the trial court in this present case also ignored Hoiles. Between 1965 and the date this present action was commenced, improvements were made to the lots, including the installation of septic tanks and the construction or placement of dwellings. More specifically, on Lot 21 there is now a mobile home, and on Lots 19 and 20 there is what the record suggests is a "substantial house," which was constructed by Dickson in 1976.
In that connection, Lots 18, 19, and 20, which are involved in this case, were not involved in Hoiles. Although Lots 19 and 20 are clearly within the area described as "Beach" on the Bay View Terrace map, for reasons that are not apparent the complainants in Hoiles chose not to litigate the status of those lots. For this reason, and because of the internal inconsistencies in the Hoiles judgment discussed above, purchasers of Lots 18, 19, and 20 — even with actual notice of Hoiles — would not necessarily know that title to their lots could be subject to challenge on the basis of that case. Indeed, the reverse might be true. In other words, the purchasers of Lots 18, 19, and 20 might reasonably have concluded that if their lots, which all lie to the east of the lots involved in Hoiles, were, or were likely to be, involved in the "Beach" controversy, they would have been included in Hoiles.[3]
Moreover, we take judicial notice of the fact that our holding inHoiles rendered both Lot 24 and Lot 25 practically worthless. This is so, because Lot 25, being a narrow strip of "public beach," would afford the public little, or no, benefit. Similarly, Lot 24, being 50 feet wide and bordered on two sides by "public beach," would have little value to a private party. Thus, Hoiles
effectively converted approximately 100 feet of prime beach-front property into two virtually worthless parcels. *Page 1153 
For these reasons, we overrule Hoiles to the extent it stated that "the engineer's work [on the Bay View Terrace map] . . . obliterated" Lots 21, 22, 23, and 25, and held that Lots 21, 22, 23, and 25 were dedicated to the public as a beach.278 Ala. at 518, 179 So.2d at 151. Thus, we write on a clean slate.
Unlike the trial court in Hoiles, the trial court in this
case expressly found that the map of the Climes Addition, which was filed in 1943, over three years before the filing of the Bay View Terrace map, was never vacated in the manner required by Ala. Code 1975, § 35-2-53. Section 35-2-53, like its predecessor, provides:
 "Any plat or map, whether or not executed and recorded as provided in this article, may be vacated by the owner, his executor, administrator or guardian of the lands at any time before the sale of any lot therein by a written instrument declaring the same to be vacated, executed, acknowledged and recorded in like manner as conveyances of land which declaration, being duly recorded, shall operate to destroy the force and effect of the recording of the plat or map so vacated and to divest all public rights in the streets, alleys and public grounds and all dedications laid out or described in such plat or map. When lots have been sold, the plat or map may be vacated, in the manner herein provided by all the owners of lots in such plat or map joining in the execution of such writing."
(Emphasis added.)
The Redmonds' only counterargument is an argument that the map of the Climes Addition was vacated by this Court's statement
in Hoiles that "the engineer's work [on the Bay View Terrace map] . . . obliterated" Lots 21, 22, 23, and 25. 278 Ala. at 518,179 So.2d at 151. However, had this Court in Hoiles properly considered the provisions of Title 56, § 16, it would, undoubtedly, have reached a different result. At any rate, we today overrule the portion of Hoiles on which the Redmonds rely.
Because the Climes Addition map was never properly vacated, it is in full force and effect. Thus, the parties who hold deeds to the lots involved in this case "are the true and rightful owners" of the lots. For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
Maddox, J., concurs.
See, Lyons, Brown, and England, JJ., concur in the result.
Hooper, C.J., and Houston, J., concur in part and dissent in part.
[1] Although this map is labeled as the "Climes Addition," theHoiles opinion refers to it as a replat of "Climie Addition."
[2] In this connection, Justice Houston is simply incorrect when he says in his special writing that "we are dealing with something more than stare decisis." 757 So.2d at 1153. More specifically, he says that "we are dealing with the doctrines of law of the case and res judicata insofar as lots 21, 22, 23, and 25 are concerned." Id. A simple analysis of the elements of (1) the doctrine of law of the case, (2) the doctrine of res judicata, and (3), although Justice Houston did not mention it, the doctrine of collateral estoppel, reveals that these doctrines are not applicable here.
The doctrine of law of the case does not apply, because, by definition, that doctrine applies only to questions arising laterin the same case. Blumberg v. Touche Ross Co., 514 So.2d 922,924 (Ala. 1987) (under that doctrine, "whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case"). Clearly, this is not the same case as Hoiles v. Taylor, 278 Ala. 515,179 So.2d 148 (1965).
The doctrine of res judicata does not apply here, because of the four elements necessary to the application of that doctrine, namely, "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with the same parties, and (4) with the same subject matter presented in both actions," SouthCent. Bell Tel. Co. v. State, 711 So.2d 1005, 1008 (Ala. 1998) (See, J., dissenting), two elements are not present in thiscase. First, this case does not involve the same parties as were involved in Hoiles. Specifically, the Redmonds were notinvolved in Hoiles, and the record is devoid of evidence indicating that they are in privity with any of the parties therein. See Parmater v. Amcord, Inc., 699 So.2d 1238, 1241 (Ala. 1997) (the same-parties element of res judicata may be satisfied if parties are in "privity"). Corollarily, the cause of action in this case is not the same cause of action out of which Hoiles arose. SeeEquity Resources Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala. 1998) (the doctrine of res judicata requires "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions") (per Houston, J.). In other words, the action commenced by the Redmonds, who were neither parties in Hoiles nor in privity withthe parties in Hoiles, is not the same cause of action as that involved in Hoiles.
Similarly, the doctrine of collateral estoppel does not apply in this case, because, in Alabama, that doctrine requires "mutuality," that is, both parties must have been bound by the previous judgment or else neither party may invoke the doctrine of collateral estoppel. Jones v. Blanton, 644 So.2d 882 (Ala. 1994); see also McMillian v. Johnson, 878 F. Supp. 1473, 1520
(M.D. Ala. 1995) ("It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement."),rev'd in part on other grounds, 88 F.3d 1554 (11th Cir. 1996),cert. denied, 521 U.S. 421 (1997). In other words, just as with the doctrine of res judicata, the parties in the later proceeding must be the same as those in the first, or else be in privity with them.
Finally, today's decision does not, in a real sense, "disrupt 34 years of judicially established property rights," as Justice Houston asserts, 757 So.2d 1153-54. This is so, because, from the outset, Hoiles was virtually ignored by everyone. The defendants and their privies in that case continued to treat the lots as their own, by, among other things, continuing to pay taxes on the property and installing various improvements thereon. This they did, while the successful plaintiffs in that action took no preventive action.
[3] Under these circumstances, even if we were not overrulingHoiles, it would be inequitable to extend the holding ofHoiles to include Lots 18, 19, and 20.