789 So.2d 147 (2000)
SOUTH CENTRAL BELL TELEPHONE COMPANY et al.
v.
STATE of Alabama and State Department of Revenue.
1960591.
Supreme Court of Alabama.
January 7, 2000.
Walter R. Byars of Steiner-Crum, Byars & Main, P.C., Montgomery; David J. Bowling and Courtney G. Hyers of CSX Transportation, Inc., Richmond, Virginia; Walter Hellerstein, University of Georgia School of Law, Athens, Georgia; and D. Owen Blake, Jr., of BellSouth Telecommunications, Inc., Birmingham, for appellants.
Bill Pryor, atty. gen., and Raymond L. Jackson, asst. atty. gen., Edward A. Hosp, deputy legal adviser, Governor's Office; and Joe Espy III of Melton, Espy, Williams & Hayes, P.C., Montgomery, for appellees.
Alton B. Parker, Jr., David P. Donahue, and Frances H. Jackson of Spain & Gillon, L.L.C., Birmingham, for amicus curiae Kane-Miller Corporation.
*148 Russell Jackson Drake and Charlene P. Cullen of Whatley Drake, L.L.P., Birmingham; Roger W. Kirby, Richard L. Stone, and Andrea Bierstein of Kirby, McInerney & Squire, L.L.P., New York City, New York; and Charles Dauphin of Baxley, Dillard, Dauphin & McKnight, Birmingham, for amicus curiae Gladwin Corporation.
David R. Boyd and Dorman Walker of Balch & Bingham, L.L.P., Montgomery; and James F. Hughey, Jr., and Alex B. Leath III of Balch & Bingham, L.L.P., Birmingham, for amicus curiae Alabama Power Company.
Bruce P. Ely, D.W. Wilson, and Christopher R. Grissom of Tanner & Guin, L.L.C., Tuscaloosa, for amici curiae Allegheny Teledyne Incorporated and 62 other foreign corporations.

(Second Interim Order)
PER CURIAM.
We are aware that the Alabama Legislature has passed Act No. 665, Ala. Acts 1999, which purports to solve prospectively the Commerce Clause problem with Alabama's franchise tax (see our First Interim Order in this case, dated Nov. 17, 1999), and that this Act has become law with the Governor's signature.
In South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999) ("South Central Bell"), the Supreme Court did not reserve the question whether its holding should apply retroactively. "When [the Supreme] Court does not reserve the question whether its holding should be applied to the parties before it, ... an opinion announcing a rule of federal law is properly understood to have followed the normal rule of retroactive application and must be read to hold that its rule should apply retroactively to the litigants then before the Court." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97-98, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (internal quotation marks and ellipses omitted). The Taxpayers and interests aligned with the State, including the Attorney General, the Department of Revenue, and the Governor, all agree that the Supreme Court's decision in South Central Bell must be applied retroactively. The question remaining for this Court's determination is what remedy, if any, should be fashioned.
Harper makes it clear that when a tax is ruled unconstitutional, and that ruling is applied retroactively, a State must give a remedy that comports with Federal due-process principles. Harper, 509 U.S. at 100, 113 S.Ct. 2510 (citing American Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 181, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990)). These principles of due process are found in a line of cases that begin with McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and its companion case American Trucking Ass'ns., Inc. The McKesson case allows a State to comport with due process by:
1) giving a taxpayer a refund;[1]
2) collecting back taxes from the favored class;[2]
*149 3) combining aspects of these first two options;[3]
4) barring a refund to a taxpayer that did not follow a state procedural law in seeking the refund;[4] or
5) refusing to give a remedy, in the rare case in which the State relied on now overturned precedent and the State now faces an extreme hardship if it must give a remedy.[5]
The United States Supreme Court has remanded this case for proceedings not inconsistent with its opinion. In order to discharge that responsibility, this Court needs further evidence that it, as an appellate court, is ill-suited to gather.
The evidence that we require falls into several categories. We first must have specific statements of position of all parties concerning the efficacy of Act No. 665, Ala. Acts 1999, as a cure for the constitutional defect recognized in South Central Bell. We also require position statements on the question whether Act No. 665 is consistent with §§ 229 and 232 of the Constitution of Alabama of 1901. We further require information as to the extent to which the Bell Companies[6] and CSXT, Inc., have borne the economic impact of the excess franchise taxes collected, so that we can consider the legal effect of any passing through of the burden to customers. See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 538-39, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). We require a detailed explanation of the manner in which the Bell Companies and CSXT, Inc., contend that they complied with applicable provisions of state law[7] governing contests of assessments.
We also require information in another area because we cannot at this juncture foreclose the prospect that this case constitutes that "rare case" of reliance coupled with hardship (see item 5 in the listing above). In 1989, this Court held that Alabama's franchise tax did not violate the Commerce Clause.[8]White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989). The United States Supreme Court, consistent with its prior holdings, denied certiorari review, 496 U.S. 912, 110 S.Ct. 2602, 110 *150 L.Ed.2d 282 (1990). However, in 1999 the United States Supreme Court declared the Alabama franchise tax unconstitutional as violating the Commerce Clause. South Central Bell v. Alabama, supra.
In his dissent to this Court's opinion on the original appeal in this present case, dated March 20, 1998,[9] Justice See observed that our holding in Reynolds Metals was premised on the State's argument, renewed in the original appeal in this case, that the combination of the effects of a higher rate applicable to domestic corporations and the shares tax also imposed on domestic corporations created an intrastate burden that compensated for the higher foreign franchise tax. 711 So.2d at 1011. Then, Justice See observed that "the Supreme Court has since [our decision in Reynolds Metals] clarified and narrowed the definition of a compensatory tax." Id. Justice See then cited a trilogy of United States Supreme Court cases: Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); Associated Industries of Missouri. v. Lohman, 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994); and Fulton Corp. v. Faulkner, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). The United States Supreme Court also noted the evolving nature of recent cases, stating:
"The Alabama trial court agreed with the Bell plaintiffs that their evidence, taken together with this Court's recent Commerce Clause cases, `clearly and abundantly demonstrates that the franchise tax on foreign corporations discriminates against them for no other reason than the state of their incorporation.' Memorandum Opinion in App. to Pet. for Cert. 21a-22a ... (citing Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); Associated Industries of Mo. v. Lohman, 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994); Fulton Corp. v. Faulkner, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996))."
South Central Bell, id., 526 U.S. at 164, 119 S.Ct. at 1183 (emphasis added). When the first of the trilogy, all decided after Reynolds Metals, was released, Chief Justice Rehnquist stated in his dissent:
"Once again, ... as in [Philadelphia v. New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978),] and [Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) ], the Court further cranks the dormant Commerce Clause ratchet against the States by striking down such cost-based fees, and by so doing ties the hands of the States in addressing the vexing national problem of solid waste disposal. I dissent."
Oregon Waste Systems, Inc., supra, 511 U.S. at 109, 114 S.Ct. 1345 (emphasis added).
With each crank of the ratchet, the increased effect on a State-taxing authority that relies on the former law can be enormous. After it had decided McKesson Corp., the Supreme Court addressed the role of reliance, in James B. Beam Distilling Co. v. Georgia, 501 U.S. at 543-44, 111 S.Ct. 2439, stating that "nothing we say here precludes consideration of individual equities when deciding remedial issues in specific cases," and that "[n]othing we say here deprives [the State of its] opportunity... to demonstrate reliance interests entitled to consideration in determining the *151 nature of the remedy that must be provided, a matter with which McKesson did not deal."
After James B. Beam Distilling Co., the Supreme Court rejected the imposition of a remedial limitation upon the retroactive application of a new rule to pending cases, in the context of an Ohio tolling statute that discriminated against out-of-state defendants. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 757-58, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995), where the Court declined to extend the rule protecting a state official sued individually from personal liability where the unconstitutional conduct of the official was not "clearly established" at the time of the arrest. In so holding, the Court noted the absence of "significant policy justifications" that are presented in proceedings such as actions against law-enforcement officers where burdens would fall on "society as a whole" if the rule were otherwise. 514 U.S. at 758-59, 115 S.Ct. 1745.[10] However, because of the inadequacy of the record now before us, we do not today reach these issues.[11] We must have evidence concerning the extent to which the State relied on the actions of the United States Supreme Court in the years since Reynolds Metals, as well as each party's assessment of the effect of the trilogy of cases beginning with Oregon Waste Systems in 1994. We also require evidence as to the hardship or disruption that might occur if full refunds are allowed and any other evidence that might support policy justifications sufficient to permit a remedial limitation on retroactive application of the ruling holding the tax invalid.
In order to fashion a remedy that complies with the Constitution and the holdings of the United States Supreme Court, we remand this case for the parties to present evidence dealing with the issues described in this Second Interim Order. We do not remand for a finding of fact by the trial court. The trial court must provide this Court with all necessary supporting documents, exhibits, and such sworn testimony as may be necessary to create a complete record. The information should be based on facts and, where stipulations are alleged to preclude the exercise of rights, the underlying facts shall be presented as if the stipulations did not exist. In areas where the evidence is in conflict, the trial court shall require the parties to identify such areas with specificity so that this Court can determine what further proceedings may be necessary. When the record called for in this Second Interim Order has been completed and the circuit court has made its return to today's remand, this Court will establish a briefing schedule so that the parties and amici curiae can address new issues presented by that record.
REMANDED WITH INSTRUCTIONS.[*]
*152 COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur specially.
HOOPER, Chief Justice, and MADDOX and HOUSTON, Justices (concurring specially).
We request answers to the questions set out below. For the purpose of clarity, we provide the following definitions for phrases appearing in these questions:
"Foreign corporations" refers to corporations that were not incorporated in Alabama and paid franchise taxes pursuant to former § 40-14-41, Ala.Code 1975.
"Domestic corporations" refers to corporations that were incorporated within the State of Alabama and paid franchise taxes pursuant to former § 40-14-40, Ala.Code 1975.
"Under collecting" or "under paying" refers to the unconstitutional practice of the Alabama Department of Revenue of collecting franchise taxes based on the par value of the domestic corporation's capital stock, when the Department, by statute and the Alabama Constitution, should have been collecting the tax based on the domestic corporation's value. See this Court's First Interim Order in this case, dated November 17, 1999, 789 So.2d 133 (Ala.1999).
"Bell Companies" refers to BellSouth Corporation, BellSouth Services, Inc., BellSouth Financial Services Corporation, BellSouth Advertising & Publishing Corporation, BellSouth Resources, Inc., BellSouth Products, Inc., Alabama Cellular Services, Inc., Sunlink Corporation, and TechSouth, Inc.
These are the questions:
1. (A) Do all parties agree that Act No. 665, Ala. Acts 1999, resolved prospectively the Commerce Clause problem as identified in South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999), concerning how Alabama's franchise tax has been assessed and collected? (B) If not, please explain in full.
2. (A) Do all parties agree that Act No. 665, Ala. Acts 1999, is consistent with §§ 229 and 232 of the Constitution of Alabama 1901? (B) If not, please explain in full.
3. (A) Do all parties agree that Act No. 665, Ala. Acts 1999, prevents the Department of Revenue, prospectively, from under collecting franchise taxes from domestic corporations? (B) If not, please explain in full.
4. Did South Central Bell Telephone Company bear the economic impact of the excess in franchise taxes assessed against foreign corporations over the franchise taxes assessed against domestic corporations for each year that it is claiming a refund or did it pass the burden on as an addition to the price that its customers were legally obligated to pay? See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 538-39, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).
5. Did CSXT, Inc., bear the economic impact of the excess in franchise taxes assessed against foreign corporations over the franchise taxes assessed against domestic corporations for each year that it is claiming a refund or did it pass the burden *153 on as an addition to the price that its customers were legally obligated to pay? See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 538-39, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).
6. Did the Bell Companies bear the economic impact of the excess in franchise taxes assessed against foreign corporations over the franchise taxes assessed against domestic corporations for each year that they are claiming refunds or did they pass the burden on as an addition to the price that their customers were legally obligated to pay? See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 538-39, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).
7. (A) Explain how each plaintiff complied with former § 40-2-22, Ala.Code 1975, in contesting the franchise-tax assessment for each year for which it is seeking a refund (1982 through 1992). (B) Explain how each plaintiff complied with § 40-2A-7, Ala.Code 1975, in contesting the franchise-tax assessment for each year for which it is seeking a refund (1992 through 1999).
8. In 1989, after the Court of Civil Appeals had declared the Alabama franchise tax unconstitutional as violating the Equal Protection Clause of the United States Constitution (White v. Reynolds Metals Co., 558 So.2d 367 (Ala.Civ.App. 1989)), what actions, if any, did the Governor, the Attorney General, and/or the State Legislature take relating to the problem dealt with in that case?
9. Did the State of Alabama rely on this Court's decision in White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989); the United States Supreme Court's cases cited therein; and the subsequent denial of certiorari review by the United States Supreme Court, 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990), when it continued after 1989 to assess and collect franchise taxes from the domestic corporations and foreign corporations as it had been collecting those taxes before this Court issued its decision in White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989)?
10. (A) What is the estimated amount the State of Alabama would have to pay if it is required to fully refund the franchise taxes paid by the plaintiffs during the contested tax years? (B) What impact would such a refund payment have on the State's ability to provide necessary services to the people of Alabama?
11. (A) What is the estimated amount that the State of Alabama would have to pay if it is required to fully refund the franchise taxes paid by other foreign corporations that have pending actions seeking refunds? (B) What impact would such a refund payment have on the State's ability to provide necessary services to the people of Alabama?
12. (A) What is the estimated amount that the State of Alabama would have to pay if it is required to fully refund the franchise taxes paid by all foreign corporations for the past three years? (B) What impact would such a refund payment have on the State's ability to provide necessary services to the people of Alabama?
13. Under former § 40-14-41, Ala. Code 1975, were franchise taxes being assessed and collected by the State of Alabama from foreign corporations on items that would not normally be included in ascertaining the actual value of assets used by foreign corporations in Alabama?
14. (A) If the answer to question 13 is "yes," what is the estimated amount that the State of Alabama would have to pay if it is required to refund to plaintiffs franchise taxes collected on items that would not normally be included in ascertaining the actual value of assets used by the plaintiffs in Alabama during the contested tax years? (B) What impact would such a *154 refund payment have on the State's ability to provide necessary services to the people of Alabama?
15. (A) If the answer to question 13 is "yes," what is the estimated amount that the State of Alabama would have to pay if it is required to refund to foreign corporations that have pending actions against the State, other than the plaintiffs, the franchise taxes collected on items that would not normally be included in ascertaining the actual value of assets used by those foreign corporations in Alabama during the contested tax years? (B) What impact would such a refund payment have on the State's ability to provide necessary services to the people of Alabama?
16. (A) If the answer to question 13 is "yes," what is the estimated amount that the State of Alabama would have to pay if it is required to refund to all foreign corporations the franchise taxes collected on items that would not normally be included in ascertaining the actual value of assets used by foreign corporations in Alabama during the contested tax years? (B) What impact would such a refund payment have on the State's ability to provide necessary services to the people of Alabama?
17. If the Department of Revenue attempted to collect back taxes from underpaying domestic corporations based on the excess of the corporation's value over the par value of the corporation's stock: (A) What difficulties, if any, would the Department of Revenue face in attempting to assess and collect those taxes? (B) What estimated expenses would the Department incur in attempting to assess and collect such taxes? (C) What effect would the principle of law enunciated in Ex parte Sizemore, 605 So.2d 1221 (Ala.1992), and Morgan County v. Jones, 740 So.2d 1063 (Ala.1999), have on the Department's attempt to retroactively collect taxes that this Court in its First Interim Order in this case held should have been collected from domestic corporations in accordance with § 229 of the Constitution of Alabama of 1901 and § 40-14-40, Ala.Code 1975?
We welcome supplemental briefs from the parties and amici curiae on the issues addressed by this special concurrence addressed to the Second Interim Order.
NOTES
[1] See McKesson Corp., 496 U.S. at 40, 110 S.Ct. 2238.
[2] See McKesson, 496 U.S. at 40, 110 S.Ct. 2238. We make no determination as to whether back taxes can be collected through assessments by the Department of Revenue for prior years under now repealed § 40-14-40, Ala.Code Ala.1975, based upon the interpretation of § 229, Constitution of Alabama of 1901, given in our Interim Order of November 17, 1999, as opposed to the Legislature's enactment of retroactive taxes on previously favored domestic corporations. Of course, such legislation would have to satisfy federal due process. See McKesson, 496 U.S. at 40 n. 23, 110 S.Ct. 2238; United States v. Carlton, 512 U.S. 26, 30-31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (retroactivity must serve rational legislative purpose and must be for a short and limited period).
[3] See McKesson, 496 U.S. at 40, 110 S.Ct. 2238.
[4] See McKesson, 496 U.S. at 36-37, 110 S.Ct. 2238.
[5] See McKesson, 496 U.S. at 44-45, 110 S.Ct. 2238 (observing that in the particular facts of that case, Florida's hardship did not outweigh the need for a refund). But, see, Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 757-58, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995), discussed infra, 789 So.2d at 151.
[6] The term "Bell Companies" refers to BellSouth Corporation; BellSouth Services, Inc.; BellSouth Financial Services Corporation; BellSouth Advertising & Publishing Corporation; BellSouth Resources, Inc.,; BellSouth Products, Inc.; Alabama Cellular Services, Inc.; Sunlink Corporation; and TechSouth, Inc.
[7] See Ala.Code 1975, former § 40-2-22, for the years 1982-1992 and § 40-2A-7 for the years 1992-1999. Failure to comply with state procedural requirements can preclude a recovery of taxes paid pursuant to a levy or assessment that violates the United States Constitution. McKesson, 496 U.S. at 45, 110 S.Ct. 2238; Reynoldsville Casket Co. v. Hyde, 514 U.S. at 757-58, 115 S.Ct. 1745.
[8] The United States Supreme Court had previously held, in two separate cases, that Alabama's franchise tax did not violate the Commerce Clause of the United States Constitution. Southern Natural Gas Corp. v. Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970 (1937); and Kansas City, M. & B.R.R. v. Stiles, 242 U.S. 111, 37 S.Ct. 58, 61 L.Ed. 176 (1916).
[9] South Cent. Bell Tel. Co. v. State, 711 So.2d 1005 (Ala.1998), reversed, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999).
[10] Justice Kennedy, joined by Justice O'Connor, concurred in the judgment in Reynoldsville Casket Co. He wrote:

"We do not read today's opinion to surrender in advance our authority to decide that in some exceptional cases, courts may shape relief in light of disruption of important reliance interests or the unfairness caused by unexpected judicial decisions. We cannot foresee the myriad circumstances in which the question might arise."
514 U.S. at 761, 115 S.Ct. 1745. (Kennedy, J., concurring in the judgment.)
[11] Even if we subsequently hold that Reynoldsville Casket Co., precludes a consideration of circumstances that justify withholding a remedy for some or all of the years in question, the matter is of sufficient import to justify giving the State the opportunity to make a record on the issue in the event of subsequent review of these proceedings by the United States Supreme Court.
[*] Note from the reporter of decisions: The Supreme Court's docket sheet carries these entries:

"9-12-00 Agreement between State of Ala., Ala. Dept. of Revenue, and BellSouth Telecommunications, and BellSouth Corporation.
"9-13-00 All parties' motion to dismiss appeal
"10-10-00 Appeal dismissed; no opinion.
"10-18-00 Amended order of dismissal."