6 So.3d 1148 (2007)
VULCAN LANDS, INC.
v.
G. Thomas SURTEES, as commissioner of the Alabama Department of Revenue.
2060607.
Court of Civil Appeals of Alabama.
November 30, 2007.
*1149 Matthew H. Lembke, Christopher R. Grissom, and John C. Neiman, Jr., of Bradley Arant Rose & White, LLP, Birmingham; and William C. McGowin of Bradley Arant Rose & White, LLP, Montgomery, for appellant.
Susan E. Kennedy and Sabrina L. Comer of Slate Kennedy, LLC, Montgomery, for appellee.
BRYAN, Judge.
The plaintiff, Vulcan Lands, Inc. ("Vulcan Lands"), appeals from a summary judgment in favor of the defendant, G. Thomas Surtees, as commissioner of the Alabama Department of Revenue ("the Department"). We affirm in part, reverse in part, and remand.

Factual Background and Procedural History
In White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989), the Alabama Supreme Court held that Alabama's franchise-tax scheme did not violate the Commerce Clause of the United States Constitution. However, in South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999), the United States Supreme Court held that Alabama's franchise-tax scheme did violate the Commerce Clause of the United States Constitution. In pertinent part, the United States Supreme Court stated:
"The basic question in this case is whether the franchise tax Alabama assesses on foreign corporations violates the Commerce Clause. We conclude that it does.
"Alabama requires each corporation doing business in that State to pay a franchise tax based upon the firm's capital. A domestic firm, organized under the laws of Alabama, must pay tax in an amount equal to 1% of the par value of the firm's stock. Ala. Const., Art. XII, § 229; Ala.Code § 40-14-40 (1993); App. to Pet. for Cert. 50a, 52a, 61a (Stipulated Facts). A foreign firm, organized under the laws of a State other than Alabama, must pay tax in an *1150 amount equal to 0.3% of the value of `the actual amount of capital employed' in Alabama. Ala. Const., Art. XII, § 232; Ala.Code § 40-14-41(a) (Supp.1998). Alabama law grants domestic firms considerable leeway in controlling their own tax base and tax liability, as a firm may set its stock's par value at a level well below its book or market value.App. to Pet. for Cert. 52a-53a (Stipulated Facts). Alabama law does not grant a foreign firm similar leeway to control its tax base, however, as the value of the `actual' capital upon which Alabama calculates the foreign franchise tax includes not only the value of capital stock but also other accounting items (e.g., long-term debt, surplus), the value of which depends upon the firm's financial status. Id., at 53a-54a; Ala.Code §§ 40-14-41(b)(1)-(5), (c) (Supp.1998).
". . . .
". . . [W]e conclude that this Court's Commerce Clause precedent requires us to hold Alabama's franchise tax unconstitutional. Alabama law defines a domestic corporation's tax base as including only one item  the par value of capital stock  which the corporation may set at whatever level it chooses. A foreign corporation's tax base, on the other hand, contains many additional balance sheet items that are valued in accordance with generally accepted accounting principles, rather than by arbitrary assignment by the corporation. Accordingly, as the State has admitted, Alabama law gives domestic corporations the ability to reduce their franchise tax liability simply by reducing the par value of their stock, while it denies foreign corporations that same ability. App. to Pet. for Cert. 52a-53a (Stipulated Facts). And no one claims that the different tax rates for foreign and domestic corporations offset the difference in the tax base. The tax therefore facially discriminates against interstate commerce and is unconstitutional unless the State can offer a sufficient justification for it. Cf. Fulton Corp. v. Faulkner, 516 U.S. 325 (1996) (state tax scheme requiring shareholders in out-of-state corporations to pay tax on a higher percentage of share value than shareholders of corporations operating solely within the State facially discriminated in violation of the Commerce Clause). This discrimination is borne out in practice, as the record, undisputed here, shows that the average domestic corporation pays only one-fifth the franchise tax it would pay if it were treated as a foreign corporation. See App. to Pet. for Cert. 36a (plaintiffs' statement of facts); Mem. Op. 21a, and n. 7 (adopting plaintiffs' statement of facts).
"The State cannot justify this discrimination on the ground that the foreign franchise tax is a `complementary' or `compensatory' tax that offsets the tax burden that the domestic shares tax imposes upon domestic corporations. E.g., Henneford v. Silas Mason Co., 300 U.S. 577 (1937) (upholding a facially discriminatory use tax as `complementary' to a domestic sales tax). Our cases hold that a discriminatory tax cannot be upheld as 'compensatory' unless the State proves that the special burden that the franchise tax imposes upon foreign corporations is `roughly . . . approximate' to the special burden on domestic corporations, and that the taxes are similar enough `in substance' to serve as `mutually exclusive' proxies for one another. Oregon Waste Systems[, Inc. v. Department of Envt'l Quality], 511 U.S. [93] at 103 [(1994)]; accord, Fulton, supra, at 332-333.
"In this case, however, the relevant tax burdens are not `roughly approximate.' *1151 See App. to Pet. for Cert. 36a-37a (plaintiffs' statement of facts, showing that the foreign franchise tax burden far exceeds the domestic franchise tax and the domestic shares tax combined); Mem. Op. 21a, n. 7 (adopting plaintiffs' statement of facts); cf. [South Central Bell Telephone Co. v. State,] 711 So.2d [1005] at 1011 [(Ala.1998)] (See, J., dissenting) (in the face of the State's `indefinite assertion,' plaintiffs offered `substantial evidence . . . that the foreign franchise tax exceeds any intrastate burden' imposed through the higher franchise tax rate and the domestic shares tax). And the State has made no effort to persuade this Court otherwise.
"Nor are the two tax burdens similar in substance. Alabama imposes its foreign franchise tax upon a foreign firm's decision to do business in the State; Alabama imposes its domestic shares tax upon the ownership of a certain form of property, namely, shares in domestic corporations. Compare Ala.Code § 40-14-41 with § 40-14-70 (1993 and Supp. 1998). No one has explained to us how the one could be seen as a `proxy' for the other.
". . . .
"For these reasons, the judgment of the Alabama Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion."
526 U.S. at 162-71, 119 S.Ct. 1180.
After the United States Supreme Court remanded South Central Bell Telephone Co. v. Alabama to the Alabama Supreme Court, the Alabama Supreme Court issued an interim order in that case in which it stated, in pertinent part:
"The question remaining for this Court's determination is what remedy, if any, should be fashioned.
"Harper [v. Virginia Department of Taxation, 509 U.S. 86 (1993),] makes it clear that when a tax is ruled unconstitutional, and that ruling is applied retroactively, a State must give a remedy that comports with Federal due-process principles. Harper, 509 U.S. at 100, 113 S.Ct. 2510 (citing American Trucking Ass'ns. Inc. v. Smith, 496 U.S. 167, 181, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990)). These principles of due process are found in a line of cases that begin with McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and its companion case American Trucking Ass'ns., Inc. The McKesson case allows a State to comport with due process by:
"1) giving a taxpayer a refund;
"2) collecting back taxes from the favored class;
"3) combining aspects of these first two options;
"4) barring a refund to a taxpayer that did not follow a state procedural law in seeking the refund; or
"5) refusing to give a remedy, in the rare case in which the State relied on now overturned precedent and the State now faces an extreme hardship if it must give a remedy."
South Cent. Bell Tel. Co. v. State, 789 So.2d 147, 148-49 (Ala.2000) (footnotes omitted). The Alabama Supreme Court then remanded the action to the trial court for it to receive evidence regarding what remedy, if any, should be fashioned. However, that action was settled before the trial court determined what remedy, if any, should be fashioned.
On March 15, 1999, eight days before the United States Supreme Court delivered its decision in South Central Bell Telephone Co. v. Alabama, Vulcan Lands, a corporation incorporated under the laws of the State of New Jersey, paid the Department *1152 $29,890 in franchise tax. On August 31, 1999, approximately five months after the United States Supreme Court delivered its decision in South Central Bell Telephone Co. v. Alabama, Vulcan Lands voluntarily paid an additional $371 in franchise tax to the Department.
On August 28, 2000, Vulcan Lands, on the basis of the holding of the United States Supreme Court in South Central Bell Telephone Co. v. Alabama, petitioned the Department for a refund of the $30,261 in franchise tax Vulcan Lands had paid during 1999. The Department did not respond to Vulcan Lands' petition within six months. Consequently, pursuant to § 40-2A-7(c)(3), Ala.Code 1975, the petition of Vulcan Lands was deemed denied.
Vulcan Lands appealed from the denial of its petition to the Montgomery Circuit Court on April 16, 2001. After conducting discovery, Vulcan Lands and the Department filed cross-motions for a summary judgment. On March 12, 2007, the trial court entered a judgment granting the summary-judgment motion filed by the Department and denying the one filed by Vulcan Lands. That judgment stated:
"This cause having come before the Court on Cross Motions for Summary Judgment, the same having been heard and considered, it is hereby ORDERED, ADJUDGED AND DECREED that the [Department's] Motion for Summary Judgment is GRANTED and [Vulcan Lands'] Motion for Summary Judgment is DENIED.
"[Vulcan Lands] filed this action with this Court seeking a tax refund of its 1999 foreign franchise tax. The unconstitutionality of Alabama's franchise tax scheme is well settled. South Central Bell Telephone Co. v. Alabama, 526 U.S. 160 (1999). As the Alabama Supreme Court directed, this Court is now charged with determining what remedy, if any, is due this taxpayer. South Central Bell Telephone Co. v. State, 789 So.2d 147, 148 (Ala.2000). Further, it is well established that the Taxpayer bears the burden of proving that it suffered discrimination because of the unconstitutional franchise tax scheme, that is, the Taxpayer bears the burden of proving that it was injured. Gregg Dyeing Co. v. Query, 286 U.S. 472, 481-82 (1932).
"A taxpayer's injury, that is, its refund amount, is the difference between what it actually paid and what a similarly situated domestic competitor would have paid. As the United States Supreme Court noted in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18 (1990), `the State may cure the invalidity of the [unconstitutional tax] by refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received.' 496 U.S. at 40-41.
"In this action, there are no genuine issues of material fact, and the [Department] is entitled to judgment as a matter of law. Competitive injury is the basis of a Commerce Clause violation. If a company has no competition, and specifically no in-state competition, it cannot prove harm. Thus a taxpayer cannot prove economic damage from its status of being `disfavored' without the presence of a `favored' competitor, and that favored competitor's existence must be actual, that is, not speculative. Gregg Dyeing Co. v. Query, 286 U.S. 472, 481 (1932). `Hence, the salient feature of the position petitioner "should have occupied" absent any Commerce Clause violation is its equivalence to the position actually occupied by petitioner's favored competitors.' McKesson, 496 U.S. at 42.

*1153 "Under the facts presented in this case, [Vulcan Lands] offered no specific evidence of a domestic competitor, and consequently there is no injury and therefore no refund due. Furthermore, the [Department] offered undisputed evidence that [Vulcan Lands] is not a normal competitive entity. [Vulcan Lands] is merely a holding company and is an entity that was formed for the administrative efficiency of the group, and it is insulated from the normal competitive pressures by virtue of its relationship with its parent company. [Vulcan Lands'] corporate representative testified to the same. ([The Department's] Brief in Support of Motion for Summary Judgment, Exhibit B, Reese deposition, pp. 14-15, 20-22, and 121-22.)
"[Vulcan Lands] has not carried its burden of proving that it had domestic competition such that it was discriminated against or disfavored by the tax. [Vulcan Lands] has not suffered any injury in this case. `[I]n the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference. . . .' General Motors Corp. v. Tracy, 519 U.S. 278, 300 (1997)."
Vulcan Lands then timely appealed to this court.

Standard of Review
"`We review a summary judgment de novo.'" Bradley v. Miller, 878 So.2d 262, 266 (Ala.2003) (quoting Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala. 2002)).

Analysis
Vulcan Lands argues that the trial court erred in granting the summary-judgment motion of the Department because, Vulcan Lands says, the premise upon which the trial court based that conclusion, i.e., that Vulcan Lands was required to prove that it was in competition with a domestic corporation who was favored by Alabama's franchise-tax scheme in order for Vulcan Lands to establish its right to a refund of the $30,261 in franchise taxes it paid for 1999, was erroneous.
The trial court cited Gregg Dyeing Co. v. Query, 286 U.S. 472, 52 S.Ct. 631, 76 L.Ed. 1232 (1932), as authority for its conclusion that Vulcan Lands had to prove that it was in competition with a domestic corporation and, therefore, suffered discrimination as a result of Alabama's franchise-tax scheme in order to establish its right to a refund. However, in Gregg Dyeing Co. v. Query, the United States Supreme Court was addressing the threshold issue whether a state tax violated the Commerce Clause rather than the issue whether the foreign taxpayer was entitled to a refund. The Court held in Gregg Dyeing Co. v. Query that, because the taxpayer had not established that it had suffered discrimination as a result of the state tax, it had not proved that the state tax violated the Commerce Clause. Because the taxpayer had not proved that it had suffered discrimination as a result of the state tax, the Court did not reach the issue whether the taxpayer was entitled to a refund.
On the other hand, in the case now before us, the threshold issue whether Alabama's franchise-tax scheme violates the Commerce Clause had already been decided by the United States Supreme Court in South Central Bell Telephone Co. v. Alabama before Vulcan Lands sought a refund. In that case, the United States Supreme Court held that Alabama's franchise-tax scheme violated the Commerce Clause because it discriminated against all foreign corporations doing business in Alabama by requiring them to include in their tax base balance-sheet items "that are valued in accordance with generally accepted accounting principles, rather than by arbitrary *1154 assignment by the corporation," whereas it required domestic corporations to include in their tax base "only one item  the par value of capital stock  which the corporation may set at whatever level it chooses." 526 U.S. at 169, 119 S.Ct. 1180. Thus, it has already been established, as a matter of law, that Alabama's franchise-tax scheme discriminated against Vulcan Lands. Therefore, the case now before us is distinguishable from Gregg Dyeing Co. v. Query.
The trial court also used a quote from General Motors Corp. v. Tracy, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997), to imply that Vulcan Lands was required to prove that it had a domestic competitor who was favored by Alabama's franchise-tax scheme in order to establish that it was entitled to a refund. However, in General Motors Corp. v. Tracy, like in Gregg Dyeing Co. v. Query, the United States Supreme Court was addressing the threshold issue whether a state tax violated the Commerce Clause rather than the issue whether the taxpayer was entitled to a refund. Moreover, as in Gregg Dyeing Co. v. Query, the United States Supreme Court did not reach the issue whether the taxpayer was entitled to a refund in General Motors Corp. v. Tracy because it concluded that the state tax did not violate the Commerce Clause. Therefore, the quote from General Motors Corp. v. Tracy does not support the trial court's conclusion that Vulcan Lands was required to prove that it had a competitor who was favored by Alabama's franchise-tax scheme in order to establish its right to a refund.
The trial court also used two quotes from McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), to support its conclusion that Vulcan Lands could not establish its right to a refund unless it proved that it had at least one domestic competitor who was favored by Alabama's franchise-tax scheme. However, those two quotes do not support the trial court's conclusion because the situation addressed by the United States Supreme Court in McKesson Corp. v. Division of Alcoholic Beverages & Tobacco is distinguishable from the situation involved in the case now before us. In McKesson, the Court was addressing a Florida liquor tax that was only paid by a subset of the entities doing business in Florida, i.e., wholesale distributors of liquor products. The excise tax discriminated against wholesale distributors whose liquor products were not manufactured from crops commonly grown in Florida by requiring them to pay higher tax rates than wholesale distributors whose liquor products were manufactured from crops commonly grown in Florida. Consequently, the United States Supreme Court stated in McKesson Corp. v. Division of Alcoholic Beverages & Tobacco that the refund the State of Florida owed the wholesale distributor who had been discriminated against was the difference between the tax it had paid and the tax it would have been assessed were it extended the same rate reductions as the wholesale distributors who were favored by Florida's liquor-excise-tax scheme, which, because that scheme only affected one subset of the entities doing business in Florida, happened to be the entities in direct competition with the wholesale distributor who was discriminated against.
However, in South Central Bell Telephone Co. v. Alabama, the United States Supreme Court held that Alabama's franchise-tax scheme discriminated against all foreign corporations because it required them to pay franchise tax based on a less favorable tax basis than all domestic corporations. Therefore, in the case now before us, unlike in McKesson Corp. v. Division *1155 of Alcoholic Beverages & Tobacco, the taxpayers who are favored by the discriminatory state tax scheme are all domestic corporations and the taxpayers who are disfavored are all foreign corporations. Consequently, because the situation in McKesson Corp. v. Division of Alcoholic Beverages & Tobacco is distinguishable from the situation in the case now before us, the quotes from McKesson Corp. v. Division of Alcoholic Beverages & Tobacco upon which the trial court relied do not constitute authority for the trial court's conclusion that Vulcan Lands is required to prove that Alabama's franchise-tax scheme favored a domestic corporation in direct competition with Vulcan Lands in order for it to establish its right to a refund.
We conclude that, because the holding of the United States Supreme Court in South Central Bell Telephone Co. v. Alabama established, as a matter of law, that Alabama's franchise-tax scheme discriminated against Vulcan Lands, Vulcan Lands was not required to prove that it had a domestic competitor who was favored by Alabama's franchise-tax scheme in order to establish its right to a refund. Therefore, the trial court erred in granting the Department's summary-judgment motion on the ground that Vulcan Lands had failed to meet such an evidentiary burden. Accordingly, we reverse the trial court's judgment insofar as it granted the Department's summary-judgment motion.
Vulcan Lands also argues that the trial court erred in denying its summary-judgment motion because, Vulcan Lands says, it was entitled, as a matter of law, to a judgment awarding it a refund of the entire $30,261 in franchise taxes it paid for 1999. Although there are some contexts in which an appellate court will not review the propriety of the denial of a summary-judgment motion, e.g., Hill v. Cleveland, 929 So.2d 471, 477 (Ala.Civ.App. 2005), we will review it in this instance because the appeal of Vulcan Lands falls within the rule announced by the Alabama Supreme Court in Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Authority, 837 So.2d 253, 263 (Ala.2002) ("[An] appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b)[, Ala. R. Civ. P.,] summary judgment disposing of fewer than all claims) entitles the [appellant], for purposes of [an appellate court's] review, to raise issues based upon the trial court's adverse rulings, including the denial of [the appellant's] summary-judgment motion. See Ala. R.App. P., 4(a)(1).").
"When a State penalizes taxpayers for failure to remit their taxes in timely fashion, thus requiring them to pay first before obtaining review of the tax's validity, federal due process principles long recognized by our cases require the State's postdeprivation procedure to provide a `clear and certain remedy,' [Atchison, Topeka & Santa Fe Ry. Co. v.] O'Connor, 223 U.S. [280] at 285 [(1912)], for the deprivation of tax moneys in an unconstitutional manner."
McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. at 51, 110 S.Ct. 2238. As the Alabama Supreme Court noted in South Central Bell Telephone Co. v. State, a state may meet the requirements of due process in that situation by (1) giving the taxpayer a refund, (2) collecting back taxes from the favored class, (3) combining aspects of (1) and (2), (4) barring a refund to a taxpayer that did not follow a state procedural law in seeking a refund, or (5) refusing to give a remedy, in the rare case in which the state relied on now overturned precedent and the state now faces an extreme hardship if it must give a remedy. 789 So.2d at 148-49.
*1156 In the case now before us, it is undisputed that the Department has elected not to collect back taxes from the favored class and that Vulcan Lands has followed Alabama procedural law governing claims seeking refunds. Therefore, the United States Supreme Court's holding in South Central Bell Telephone Co. v. Alabama required the Department either (1) to give Vulcan Lands a refund or (2) to prove that the Department relied on now overturned precedent and that the State now faces an extreme hardship if it must give Vulcan Lands a refund.
The Department's first line of defense to Vulcan Lands' summary-judgment motion was its contention that Vulcan Lands had failed to establish a prima facie case that it was entitled to a refund because it had failed prove an essential element of such a claim, i.e., that the franchise-tax scheme discriminated against Vulcan Lands by placing it at a competitive disadvantage compared to a domestic corporation with whom Vulcan Lands was in direct competition. The trial court appears to have based its denial of Vulcan Lands' summary-judgment motion on that defense. Although we held above that this defense is not valid, we must also consider whether the trial court's denying Vulcan Lands' summary-judgment motion was warranted by the affirmative defenses asserted by the Department. See General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala.2003) ("This Court may affirm a trial court's judgment on `any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.'" (quoting Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala. 2003))).
As one of its affirmative defenses to Vulcan Lands' refund claim, the Department asserted that the State was entitled to refuse to give Vulcan Lands a remedy for its payment of taxes pursuant to Alabama's unconstitutional franchise-tax scheme because, the Department said, it had relied on now overturned precedent and the State now faces an extreme hardship if it must give Vulcan Lands a refund. In support of this defense, the Department introduced substantial evidence tending to prove that the Alabama Supreme Court had held in White v. Reynolds Metals Co., 558 So.2d 373, that Alabama's franchise-tax scheme did not violate the Commerce Clause; that the Alabama Supreme Court again held that Alabama's franchise-tax scheme did not violate the Commerce Clause in South Central Bell Telephone Co. v. State, 711 So.2d 1005 (Ala.1998); and that no decision of the United States Supreme Court had held that Alabama's franchise-tax scheme or any comparable state tax scheme violated the Commerce Clause before the United States Supreme Court decided South Central Bell Telephone Co. v. Alabama. The Department also introduced substantial evidence tending to prove that the State would incur an extreme financial hardship if it is required to refund the franchise taxes paid by all foreign taxpayers who had requested refunds. At the very least, this evidence established the existence of a genuine issue of material fact with respect to Vulcan Lands' summary-judgment motion. Therefore, the trial court did not err in denying Vulcan Lands' summary-judgment motion. See Blackmon v. Brazil, 895 So.2d 900, 904 (Ala.2004) ("`Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425 (Ala.1999).'" (quoting Bruce v. Cole, 854 So.2d 47, 54 (Ala.2003))). Therefore, *1157 the trial court did not err in denying Vulcan Lands' summary-judgment motion.
In summary, we reverse the trial court's judgment insofar as it granted the Department's summary-judgment motion, we affirm the trial court's judgment insofar as it denied Vulcan Lands' summary-judgment motion, and we remand the case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, J., concurs.
THOMPSON, P.J., concurs in the result, without writing.
THOMAS, J., concurs in the result, with writing, which MOORE, J., joins.
THOMAS, Judge, concurring in the result.
I note that on remand both aspects of the Department's affirmative defense present issues that must be determined by the trial court.
The first issue is a mixed question of law and fact, namely: whether the State of Alabama reasonably relied on White v. Reynolds Metals Co., 558 So.2d 373 (Ala. 1989), cert. denied 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990), to conclude that its franchise-tax scheme did not violate the Commerce Clause when a trio of United States Supreme Court cases decided after White  Oregon Waste Systems Inc. v. Department of Environmental Quality of Oregon, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); Associated Industries of Missouri v. Lohman, 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994); and Fulton Corp. v. Faulkner, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996)  arguably made that reliance misplaced. The second issue is one of fact, namely: whether the State now faces an extreme hardship if it must give Vulcan Lands a refund.
MOORE, J., concurs.