G. Thomas Surtees, as commissioner of the Alabama Department of Revenue ("the Department"), [1] and Vulcan Lands, Inc. ("Vulcan"), sought certiorari review in case nos. 1070386 and 1070399, respectively, of an opinion of the Court of Civil Appeals in Vulcan's action seeking a refund of franchise taxes it paid pursuant to former Ala. Code 1975, § 40-14-41. We affirm in case no. 1070386 and reverse and remand in case no. 1070399.
 I. Background
This case is another chapter in the long-running dispute over franchise taxes assessed against foreign corporations under § 40-14-41. In White v. Reynolds Metals Co.,558 So.2d 373 (Ala. 1989), this Court upheld § 40-14-41 against a claim that it violated the Commerce Clause of the United States Constitution. The United States Supreme Court denied certiorari review in that case. In South Central Bell Telephone Co. v.Alabama, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258
(1999) ("SCB I"), however, the Supreme Court struck down § 40-14-41 as violative of the Commerce Clause. The Court did not discuss remedies available to parties who have *Page 1159 
paid taxes under § 40-14-41, but merely remanded the case "for further proceedings not inconsistent with [the] opinion."526 U.S. at 171, 119 S.Ct. 1180. In South Central BellTelephone Co. v. State, 789 So.2d 147 (Ala. 2000) ("SCBII"), this Court discussed "what remedy, if any, should be fashioned." 789 So.2d at 148 (emphasis added). We remanded the case "for the parties to present evidence dealing with the issues" regarding an appropriate remedy.789 So.2d at 151. On remand, before this Court could determine an appropriate remedy for the plaintiff taxpayers, the parties settled their dispute.
The opinion of the Court of Civil Appeals in this case sets forth the following facts:
 "On March 15, 1999, eight days before the United States Supreme Court delivered its decision in [SCB I], Vulcan . . ., a corporation incorporated under the laws of the State of New Jersey, paid the Department $29,890 in franchise tax. On August 31, 1999, approximately five months after the United States Supreme Court delivered its decision in [SCB I], Vulcan . . . voluntarily paid an additional $371 in franchise tax to the Department.
 "On August 28, 2000, Vulcan . . . petitioned the Department for a refund of the $30,261 in franchise tax Vulcan . . . had paid during 1999. The Department did not respond to [Vulcan's] petition within six months. Consequently, pursuant to § 40-2A-7(c)(3), Ala. Code 1975, the petition . . . was deemed denied.
 "Vulcan . . . appealed from the denial of its petition to the Montgomery Circuit Court on April 16, 2001."
Vulcan Lands, Inc. v. Surtees, 6 So.3d 1148, 1151-52 (Ala.Civ.App. 2007).
In an interrogatory propounded to the Department, Vulcan asked: "State every reason, whether legal or factual, that the [Department] contends is a basis for affirmance of the Department's denial of Vulcan's Foreign Franchise Tax Refund Petition filed in connection with Vulcan's 1999 Alabama Foreign Franchise Tax Return." In response, the Department stated (1) that the "outstanding claims of foreign franchise taxpayers . . . total over $269,000,000"; (2) that it expected the evidence to show that the State was in a "unique position" to suffer a hardship "that would be inflicted on the infrastructure of the State from paying the outstanding claims"; and (3) that "the Defendant reasonably relied on published case law, [namely,]White v. Reynolds Metals Co., 558 So.2d 373
(Ala. 1989)," in collecting the taxes.
The parties filed cross-motions for a summary judgment. In its motion, Vulcan argued that there was no genuine issue of material fact with respect to the availability of the defense that the State had relied on now overruled precedent and that the State faces extreme hardship if it is forced to refund the taxes ("the reliance-hardship defense") and that the reliance-hardship defense was unavailable as a matter of law. The trial court granted the commissioner's motion and denied Vulcan's motion, holding that Vulcan had failed to show that it had been injured by disparate tax treatment and that, therefore, it was not entitled to any refund. More specifically, the trial court stated:
 "`[Vulcan] filed this action with this Court seeking a tax refund of its 1999 foreign franchise tax. The unconstitutionality of Alabama's franchise tax scheme is well settled. South Central Bell Telephone Co. v. Alabama, 526 U.S. 160, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999). . . . Further, it is well established that the Taxpayer bears the burden of proving that it suffered discrimination because of the unconstitutional *Page 1160 
franchise tax scheme, that is, the Tax-payer bears the burden of proving that it was injured. Gregg Dyeing Co. v. Query, 286 U.S. 472, 481-82 (1932).
 "`A taxpayer's injury, that is, its refund amount, is the difference between what it actually paid and what a similarly situated domestic competitor would have paid. As the United States Supreme Court noted in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18 (1990), "the State may cure the invalidity of the [unconstitutional tax] by refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received." 496 U.S. at 40-41.
 "`. . . Competitive injury is the basis of a Commerce Clause violation. If a company has no competition, and specifically no in-state competition, it cannot prove harm. Thus a taxpayer cannot prove economic damage from its status of being "disfavored" without the presence of a "favored" competitor, and that favored competitor's existence must be actual, that is, not speculative. Gregg Dyeing Co. v. Query, 286 U.S. 472, 481 (1932). "Hence, the salient feature of the position petitioner `should have occupied' absent any Commerce Clause violation is its equivalence to the position actually occupied by petitioner's favored competitors." McKesson, 496 U.S. at 42.
 "`Under the facts presented in this case, [Vulcan] offered no specific evidence of a domestic competitor, and consequently there is no injury and therefore no refund due. Furthermore, the [Department] offered undisputed evidence that [Vulcan] is not a normal competitive entity. [Vulcan] is merely a holding company and is an entity that was formed for the administrative efficiency of the group, and it is insulated from the normal competitive pressures by virtue of its relationship with its parent company. [Vulcan's] corporate representative testified to the same. ([The Department's] Brief in Support of Motion for Summary Judgment, Exhibit B, Reese deposition, pp. 14-15, 20-22, and 121-22.)
 "`[Vulcan] has not carried its burden of proving that it had domestic competition such that it was discriminated against or disfavored by the tax. [Vulcan] has not suffered any injury in this case. "[I]n the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference. . . ." General Motors Corp. v. Tracy, 519 U.S. 278, 300 (1997).'"
Surtees, 6 So.3d at 1152-53 (emphasis added). From that judgment, Vulcan appealed, contending that the trial court erred in granting the Department's summary-judgment motion and in refusing to grant Vulcan's motion as to the unavailability of the reliance-hardship defense.
On appeal, the Court of Civil Appeals reversed the summary judgment to the extent it had granted the Department's summary-judgment motion. However, it rejected Vulcan's argument that it was entitled to a summary judgment as to the Department's reliance-hardship defense. In that connection, the court stated:
 "[A] state may [redress an unconstitutional deprivation of tax payments] by (1) giving the taxpayer a refund, (2) collecting back taxes from the favored class, (3) combining aspects of (1) and (2), (4) barring a refund to a taxpayer that did not follow a state procedural *Page 1161 
law in seeking a refund, or (5) refusing to give a remedy, in the rare case in which the state relied on now overturned precedent and the state now faces an extreme hardship if it must give a remedy. . . .
 "In the case now before us, it is undisputed that the Department has elected not to collect back taxes from the favored class and that Vulcan Lands has followed Alabama procedural law governing claims seeking refunds. Therefore, the United States Supreme Court's holding in [SCB I] required the Department either (1) to give Vulcan . . . a refund or (2) to prove that the Department relied on now overturned precedent and that the State now faces an extreme hardship if it must give Vulcan . . . a refund.
 ". . . .
 "As one of its affirmative defenses to [Vulcan's] refund claim, the Department asserted that the State was entitled to refuse to give Vulcan . . . a remedy for its payment of taxes pursuant to Alabama's unconstitutional franchise-tax scheme because, the Department said, it had relied on now overturned precedent and the State now faces an extreme hardship if it must give Vulcan . . . a refund. In support of this defense, the Department introduced substantial evidence tending to prove that the Alabama Supreme Court had held in White v. Reynolds Metals Co., 558 So.2d 373, that Alabama's franchise-tax scheme did not violate the Commerce Clause; . . . and that no decision of the United States Supreme Court had held that Alabama's franchise-tax scheme or any comparable state tax scheme violated the Commerce Clause before the United States Supreme Court decided [SCB I]. The Department also introduced substantial evidence tending to prove that the State would incur an extreme financial hardship if it is required to refund the franchise taxes paid by all foreign taxpayers who had requested refunds. At the very least, this evidence established the existence of a genuine issue of material fact with respect to [Vulcan's] summary-judgment motion. Therefore, the trial court did not err in denying [Vulcan's] summary-judgment motion."
Surtees, 6 So.3d at 1155-56 (emphasis added).
Subsequently, both parties petitioned this Court for certiorari review. The Department, in case no. 1070386, asserts, among other things, that the opinion of the Court of Civil Appeals conflicts with a prior decision of the Supreme Court of the United States, namely, McKesson Corp. v. Division ofAlcoholic Beverages Tobacco, 496 U.S. 18,110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). Vulcan, in case no. 1070399, asserts, among other things, that the opinion presents a question of first impression in this Court, namely, whether the reliance-hardship defense is available, as a matter of law, to the Department. We granted the petitions and consolidated them for the purpose of writing one opinion.
 II. Discussion
For ease of discussion, we will first address the availability of the reliance-hardship defense as presented in case no. 1070399.
 A. Case No. 1070399
The Court of Civil Appeals held that Vulcan was not entitled to a summary judgment as to the Department's right to assert a reliance-hardship defense. More specifically, it concluded that there was substantial evidence creating a genuine issue of material fact on the issue whether this was that "rarecase in which the state *Page 1162 
relied on now overturned precedent and the state now faces an extreme hardship if it must give a remedy." Surtees, 6 So.3d at 1155 (emphasis added). Vulcan contends that the court erred as to this question of first impression.
The parties agree that, in any such "rare case," the reliance-hardship defense is a two-pronged one and that both prongs must be satisfied. As for the first prong, the Department contends that it "reasonably relied on [overturned] precedent in administering the former franchise tax scheme." Department's reply brief, at 22 (emphasis added). Vulcan, however, contends that, by March 15, 1999, the date of its first 1999 franchise-tax payment, the Department hadabandoned any reliance on such precedent. We agree.
In SCB I, the Court stated:
 "Rather than [Join issue with South Central Bell Telephone Company as to whether Alabama's franchise-tax scheme complies with established Commerce Clause caselaw], the [Department] instead says, with `respect to the merits,' that `the flaw in petitioners' claim lies not in the application to Alabama's corporate franchise tax of this Court's recent negative Commerce Clause cases; the flaw lies rather in the negative Commerce Clause cases themselves.' Brief of Respondents 3. The [Department] adds that the Court should `formally reconsider' and `abando[n]' its negative Commerce Clause jurisprudence."
526 U.S. at 170-71, 119 S.Ct. 1180 (emphasis added). Thus, it is clear that on January 19, 1999, the date the case was argued in the United States Supreme Court, the Department was, infact, no longer relying on the cases on which it now purports to have later "reasonably relied." In other words, it was not relying on "overturned precedent" when it accepted Vulcan's 1999 franchise-tax payments. Because the Department cannot satisfy the first prong of the reliance-hardship defense, the defense is inapplicable to Vulcan's franchise-tax-refund claim as a matter of law. The Court of Civil Appeals erred, therefore, in holding that Vulcan was not entitled to a summary judgment on the reliance-hardship defense. To the extent that it so held, the judgment of the Court of Civil Appeals is reversed, and the case is remanded.
 B. Case No. 1070386
According to the Department, the trial court correctly applied that portion of McKesson, which says that "the State may cure the invalidity of the [unconstitutional tax] by refunding to petitioner the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actuallyreceived." 496 U.S. at 40, 110 S.Ct. 2238 (emphasis added). Seizing on McKesson's use of the term "favored competitors," the Department attempts to support the trial court's holding that Vulcan failed to identify sufficiently a specific competitor for the purpose of proving that it suffered an injury.
The Department's position is that "[a] taxpayer must stand in the place of the very domestic corporation it claims was advantaged by the tax in order to determine the extent, if any, to which it was disadvantaged as a foreign corporation." Department's brief, 38-39 (emphasis added). This position, as we understand it, is best illustrated by the following example posited by the Department:
 "Consider a [foreign] corporation established by a group of partners of a law firm for the sole purpose of owning the building in which the law firm will do business. The corporation may own real property suitable for law firm operations, but it does not compete with [domestic] *Page 1163 
commercial real estate corporations that own property in which law firms could do business. In fact, like [Vulcan] here, it does not compete with any other corporation."
Department's reply brief, at 17 (emphasis added). Apparently, the foreign corporation in the Department's example would be sufficiently similar to the domestic corporation only ifboth corporations were established by lawyers
for the sole purpose of owning the building in which they practice law. The Department thus requires a foreign taxpayer to identify a specific domestic corporation that is itsvirtual mirror image as a prerequisite to a refund. In so doing, it misconstrues McKesson.
McKesson involved the remedy available to taxpayers that had paid taxes under a Florida liquor-excise-tax scheme that violated the Commerce Clause. The Florida state courts had correctly held the tax unconstitutional but had granted only prospective relief. 496 U.S. at 31, 110 S.Ct. 2238.[2] The Court held that, "[i]f a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause . . . obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivations," 496 U.S. at 31, 110 S.Ct. 2238
(footnote omitted), including, in some cases, a refund.496 U.S. at 40-41, 110 S.Ct. 2238.
In its discussion, the Supreme Court, as the Department points out, often used the term "favored competitors." However, there was no issue in McKesson regarding the existence of favored competitors. "It [was] undisputed that [they were the] manufacturers and distributors of [alcoholic] beverages [made from local products] which qualif[ied] for preferential treatment under [the challenged] scheme." Division of AlcoholicBeverages Tobacco v. McKesson Corp., 524 So.2d 1000,1008 (Fla. 1988), rev'd on other grounds, 496 U.S. 18,110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). The Court used the phrase inter-changeably with "favored distributors" throughout; once with "competitors distributing preferred local products,"496 U.S. at 48, 110 S.Ct. 2238 (emphasis added); and once with "a category of distributors." 496 U.S. at 42,110 S.Ct. 2238 (emphasis added). There is no indication that the Supreme Court was using the term "competitors" in the talismanic sense urged by the Department. The Court merely had in view acategory or class counterposed to the class to which the litigant-taxpayer belonged. Certainly, there is no indication that, by its use of the term "competitors," the Court intended to confine the class of litigants receiving refunds, as the Department proposes, to those that could actually name certain domestic entities that mirrored them in corporate structure and operation.
Thus, although we do not necessarily agree with the rationale of the Court of Civil Appeals, that court's opinion is not inconsistent with McKesson, and the Court did not err in reversing the summary judgment for the Department, which denied a refund solely on the basis of the "mirror-image rule" as propounded by the Department and applied by the trial court. To the extent that it did so, the judgment of the Court of Civil Appeals is affirmed.
 III. Conclusion
In conclusion, we reverse the judgment of the Court of Civil Appeals as to the issue we have addressed in Part II.A (case *Page 1164 
no. 1070399). We affirm the judgment as to the issue we have addressed in Part II.B (case no. 1070386). Thus, we have confined our consideration to the only two issues actually addressed by the Court of Civil Appeals. Although the parties' briefs raise numerous additional arguments, those arguments involve legal — as well as factual — issues heretofore unaddressed by any court. Chief among those issues is the amount of franchise taxes Vulcanactually would have paid in 1999 had it been assessed as a domestic corporation. See SCB I, 526 U.S. at 169,119 S.Ct. 1180 ("the record . . . shows that the average domestic corporation pays . . . one-fifth the franchise tax it would pay if it were treated as a foreign corporation");McKesson, 496 U.S. at 49 n. 33, 110 S.Ct. 2238 (where a refund of taxes collected in violation of the Commerce Clause is mandated, "the State's obligation under the Due Process Clause . . . extends only to refunding the excess taxes collected under the [discriminatory tax scheme]"). Consistent with our approach in these franchise-tax cases to proceed incrementally, seeSCB II, 789 So.2d at 151 (articulating specific issues to be addressed on remand and contemplating further briefing and arguments of the parties), we deem it imprudent to be the first court to address such issues. Consequently, this case is remanded to the Court of Civil Appeals for it to remand the case to the trial court for further proceedings consistent with this opinion.
1070386 — AFFIRMED.
1070399 — REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] While this petition was pending, Tim Russell replaced G. Thomas Surtees as the commissioner of the Alabama Department of Revenue. Rule 43(b), Ala. R.App. P., provides: "When a public officer is a party to an appeal or other proceeding in the appellate court in that officer's official capacity, and during its pendency dies, resigns, or otherwise ceases to hold office, the action shall not abate and the public officer's successor is automatically substituted as a party."
[2] The taxpayer in McKesson was a "licensed wholesale distributor of alcoholic beverages whose products did not qualify for [special] rate reductions," 496 U.S. at 23,110 S.Ct. 2238, "for certain specified citrus, grape, and sugarcane products, all of which are commonly grown in Florida and used in alcoholic beverages produced there." Id.